# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF TEXAS
### DALLAS DIVISION

| | | |
|---|---|---|
| JOAN GALE FRANK et al., | § | |
| | § | |
| Plaintiffs, | § | |
| | § | MDL NO. 3:09-MD-2099-N |
| v. | § | |
| | § | |
| THE COMMONWEALTH OF ANTIGUA AND BARBUDA, | § | |
| | § | CIVIL ACTION NO. 3:09-cv-2165-N |
| | § | |
| Defendant. | § | |
| | § | |

---

## MOTION TO DISMISS BASED ON FOREIGN SOVEREIGN IMMUNITY AND FOR FAILURE TO STATE A CLAIM AND BRIEF IN SUPPORT

---

HOGAN LOVELLS US LLP
700 Louisiana Street, Suite 4300
Houston, Texas 77002
Telephone: (713) 632-1425
Facsimile: (713) 583-6021

**COUNSEL FOR DEFENDANT ANTIGUA AND BARBUDA**

# TABLE OF CONTENTS

Page

INTRODUCTION ............................................................................................1

SUMMARY OF ARGUMENT .......................................................................1

   1.    Lack of jurisdiction based on foreign sovereign immunity ........................2

   2.    Failure to state a claim on which the Court may grant relief......................3

I. FOREIGN SOVEREIGN IMMUNITY ......................................................4

   1.    Plaintiffs' complaint suffers from prolixity without substance. ................4

   2.    Antigua and Barbuda is immune under the Foreign Sovereign
       Immunities Act. ......................................................................................6

      a.    Plaintiffs fail to allege facts giving rise to the commercial
           activity exception.............................................................................7

          i.    Plaintiffs cannot base their claims upon acts not by or
               attributable to Antigua and Barbuda. .....................................8

               1.   Plaintiffs' RICO claims, which must be based on
                   "indictable" criminal acts, cannot be based on an act
                   of Antigua and Barbuda because it is not indictable........9

               2.   Acts by the FSRC cannot deprive Antigua and
                   Barbuda of immunity .......................................................11

               3.   The *ultra vires* acts of King cannot breach Antigua
                   and Barbuda's immunity....................................................14

          ii.    Plaintiffs fail to allege any relevant commercial activity
               by Antigua and Barbuda. ......................................................15

          iii.   Plaintiffs fail to allege a sufficient direct effect.....................18

      b.    Plaintiffs fail to allege facts giving rise to the expropriation
           exception............................................................................21

      c.    Plaintiffs fail to allege facts giving rise to the waiver exception.
           ...........................................................................................22

II. FAILURE TO STATE A CLAIM ............................................................22

   1.    Standard of review.....................................................................................23

2.    RICO has no application to claims arising outside of the United States. ...................................................................................................24

3.    As a sovereign state, Antigua and Barbuda cannot be liable under RICO because it is not indictable, and it cannot form the scienter necessary for aiding and abetting liability. ...............................................26

4.    RICO claims cannot be predicated on fraud in the sale of SIBL CDs. ........27

5.    The Court must dismiss Plaintiffs' claim of avoidance because Antigua and Barbuda's acquisition of lands in Antigua and Barbuda constituted a non-judiciable Act of State. ....................................................28

C.  CONCLUSION .......................................................................................................29

## TABLE OF AUTHORITIES

**Cases**                                                                 **Page(s)**

*Abraham v. Singh,*
    480 F.3d 351 (5th Cir. 2007) ..........................................................................9, 26

*Affco Invs. 2001, LLC v. Proskauer Rose, L.L.P.,*
    No. 2009-20734, 2010 WL 4226685 (5th Cir. Oct. 27, 2010) ...............................27

*Agrocomplect, AD v. Republic of Iraq,*
    524 F. Supp. 2d 16 (D.D.C. 2007), *affirmed* 2008 WL 5455695 (D.C. Cir. 2008)................21

*Allen v. Russian Fed.,*
    522 F. Supp. 2d 167 (D.D.C. 2007) ......................................................................16

*Amorrortu v. Republic of Peru,*
    570 F. Supp. 2d 916 (S.D. Tex. 2008) .................................................11, 12, 13, 21

*Argentine Republic v. Amerada Hess,*
    488 U.S. 428 (1989).........................................................................................7, 22

*Armco Indus. Credit Corp. v. SLT Warehouse Co.,*
    782 F.2d 475 (5th Cir. 1986) .................................................................................26

*Arriba Ltd. v. Petroleos Mexicanos,*
    962 F.2d 528 (5th Cir. 1992) ...............................................................................5, 9

*Bell Atl. Corp. v. Twombley,*
    550 U.S. 544 (2007)........................................................................................23, 24

*Brown v. Nationsbank Corp.,*
    188 F.3d 579 (5th Cir. 1999) .................................................................................10

*Callejo v. Bancomer, S. A.,*
    764 F. 2d 1101 (5th Cir. 1985) .........................................................................16, 29

*Can-Am Int'l, LLC v. Republic of Trin. & Tab.,*
    169 F. App'x 396 (5th Cir. 2006) .................................................................11, 12, 20

*Cayman Exploration Corp. v. United Gas Pipe Line,*
    873 F.2d 1357 (10th Cir. 1989) ..............................................................................5

*Cedeno v. Intech Grp., Inc.,*
    No. 09-Civ-9716, 2010 WL 3359468 (S.D.N.Y. Aug. 25, 2010)....................24, 25

*Chuidian v. Philippine Nat'l Bank,*
    912 F.2d 1095 (9th Cir. 1990) ....................................................21

*Compania De Gas De Nuevo Laredo, S.A. v. Entex,*
    686 F.2d 322 (5th Cir. 1983) .....................................................29

*Crowe v. Henry,*
    43 F.3d 198 (5th Cir. 1995) ......................................................26

*Dale v. Colagiovanni,*
    443 F.3d 425 (5th Cir. 2006) ............................................. passim

*de Sanchez v. Banco Cent. De Nicar.,*
    770 F.2d 1385 (5th Cir. 1985) ...............................................8, 21

*DeSisto Coll., Inc. v. Line,*
    888 F.2d 755 (11th Cir. 1989) ....................................................6

*DiVittorio v. Equidyne Extractive Indus., Inc.,*
    822 F.2d 1242 (2d Cir. 1987).....................................................6

*Elliott v. Foufas,*
    867 F.2d 877 (5th Cir. 1991) ....................................................23

*Filetech, S.A. v. Fr. Telecom S.A.,*
    157 F.3d 922 (2d Cir. 1998).....................................................18

*First Nat'l City Bank v. Banco Para El Comercio,*
    462 U.S. 611 (1983)......................................................6, 11, 12

*Foremost-McKesson v. Islamic Republic of Iran,*
    905 F.2d 438 (D.C. Cir. 1990) ..........................................11, 12, 16

*Gabay v. Mostazafan Found. of Iran,*
    968 F. Supp. 895 (S.D.N.Y. 1997) ..............................................12

*Garb v. Republic of Pol.,*
    440 F.3d 579 (2d Cir. 2006)...........................................15, 21, 22

*Garb v. Republic of Pol.,*
    207 F. Supp. 2d 16 (E.D.N.Y. 2002) ...........................................21

*Gary Plastic Pkg. Corp. v. Merrill Lynch, Pierce, Fenner & Smith, Inc.,*
    756 F.2d 230 (2d Cir. 1985)..................................................27, 28

*Gould, Inc. v. Mitsui Mining & Smelting Co.,*
    750 F. Supp. 838 (N.D. Ohio 1990).............................................10

*Hester Int'l Corp. v. Fed. Republic of Nigeria*,
    879 F.2d 170 (5th Cir. 1989) ........................................................................12, 13

*In re Terrorism Attacks on Sept. 11, 2001*,
    349 F. Supp. 2d 765 (S.D.N.Y. 2005).....................................................................15

*J.D. Marshall Int'l, Inc. v. Redstart, Inc.*,
    935 F.2d 815 (7th Cir. 1991) ...................................................................................2

*Jungquist v. Al Nayhan*,
    115 F.3d 1020 (D.C. Cir. 1997).................................................................14, 15, 16

*Kaiser Alum. & Chem. Sales, Inc. v. Avondale Shipyards, Inc.*,
    677 F.2d 1045 (5th Cir. 1982) ...............................................................................23

*Keller v. Cent. Bank of Nigeria*,
    277 F.3d 811 (6th Cir. 2002) .........................................................................10, 15

*Kelly v. Syria Shell Petroleum Dev. B.V.*,
    213 F.3d 841 (5th Cir. 2000) .............................................................................6, 7

*Kensington Int'l Ltd. v. Itoua*,
    505 F.3d 147 (2d Cir. 2007).........................................................................18, 20

*Lancaster Cmty. Hosp. v. Antelope Valley Hosp. Dist.*,
    940 F.2d 397 (9th Cir. 1991) .........................................................................10, 27

*Marine Bank v. Weaver*,
    455 U.S. 551 (1982).....................................................................................27, 28

*MCI Telecomm. Corp. v. Alhadhood*,
    82 F.3d 658 (5th Cir. 1996) .........................................................................8, 9, 15

*McNeily v. United States*,
    6 F.3d 343 (5th Cir. 1993) ...........................................................................10, 26

*Morrison v. Nat'l Australian Bank Ltd.*,
    130 S. Ct. 2869 (2010).............................................................................24, 25, 26

*N.-S. Fin. Corp. v. Al-Turki*,
    100 F.3d 1046 (2d Cir. 1996).................................................................................24

*Norex Petroleum Ltd. v. Access Industries, Inc.*,
    No. 07-4553-cv, 2010 WL 3749281, *1 (2d Cir. Sept. 28, 2010) ....................24, 25

*O'Bryan v. Holy*,
    556 F.3d 361, 372 (6th Cir. 2009) ..........................................................................16

*Old Time Enterprises, Inc. v. International Coffee Co.,*
　862 F.2d 1213 (5th Cir. 1998) ....................................................................5, 10

*Oster v. Republic of S. Afr.,*
　530 F. Supp. 2d 92 (D.D.C. 2007) .....................................................................12

*Permanent Mission of India v. City of N.Y.,*
　127 S. Ct. 2352 (2007)........................................................................................6

*Peterson v. Royal Kingdom of Saudi Arabia,*
　416 F.3d 83 (D.C. Cir. 2005) ..............................................................................6

*Princz v. Republic of Ger.,*
　26 F.3d 1166 (D.C. Cir. 1994) ..........................................................................18

*Ramirez v. United States,*
　No. 3:01-CV-0717, 2004 WL 572359 (N.D. Tex. Mar. 22, 2004)........................23

*Republic of Arg. v. Weltover,*
　504 U.S. 607 (1992)...........................................................................................15

*Rodriguez v. Transnave Inc.,*
　8 F.3d 284 (5th Cir. 1993) .................................................................................22

*Samantar v. Yousef,*
　130 S. Ct. 2278 (2010)...............................................................................8, 9, 10

*Saudi Arabia v. Nelson,*
　507 U.S. 349 (1993)...............................................................................8, 15, 17

*SEC v. W.J. Howey Co.,*
　328 U.S. 293 (1946)...........................................................................................28

*Soudavar v. Islamic Republic of Iran,*
　186 F.3d 671 (5th Cir. 1999) .............................................................................20

*Soudavar v. Islamic Republic of Iran,*
　67 F. App'x 618 (D.C. Cir. 2003).................................................................20, 21

*Southway v. Cent. Bank of Nigeria,*
　198 F.3d 1210 (10th Cir. 1999) .........................................................................11

*Stena Rederi AB v. Petroleros Mexicana,*
　923 F.2d 380 (5th Cir. 1991) ........................................................................7, 15

*Transam. Leasing, Inc. v. La Republica De Venez.,*
　200 F.3d 843 (D.C. Cir. 2000) ...........................................................................12

*Transatl. Shiffahrtskontor GmbH v. Shanghai Foreign Trade Corp.*,
204 F.3d 384 (2d Cir. 2000)..................................................................8

*Underhill v. Hernandez*,
168 U.S. 250 (1897)..................................................................28, 29

*United States v. Moats*,
961 F.2d 1198 (5th Cir. 1992) .........................................................7

*United World Trade, Inc. v. Mangyshlakneft Oil Prod. Ass'n*,
33 F.3d 1232 (10th Cir. 1994) .....................................................18, 20

*Virtual Countries, Inc. v. Republic of S. Afr.*,
300 F.3d 230 (2d Cir. 2002)..........................................................21

*Youming Jin v. Ministry of State Sec.*,
475 F. Supp. 2d 54 (D.D.C. 2007) ..................................................17

## STATUTES

Racketeer Influenced and Corrupt Organizations Act (RICO),
18 U.S.C. § 1961, *et. seq.*..................................................... passim

28 U.S.C. § 1330(a) ...............................................................7, 10, 11

28 U.S.C. § 1330(b) .......................................................................7

Foreign Sovereign Immunities Act (FSIA),
28 U.S.C. § 1602 *et seq.*...............................................................1

28 U.S.C. § 1603(d) ..................................................................15, 17

28 U.S.C. § 1604........................................................................2, 6, 11

28 U.S.C. § 1605(a)(1)...................................................................22

28 U.S.C. § 1605(a)(2)...........................................................7, 18, 20

28 U.S.C. § 1605(a)(3)...................................................................21

Integrity in Public Life Act, 2004, Part V, § 26,
http://www.laws.gov.ag/acts/2004/a2004-23.pdf ..................................14

International Banking Corporations Act (IBC Act) § 316(2), (13),
http://www.fsrc.gov.ag/ ................................................................13

Prevention of Corruption Act, 2004, § 3(1),
    http://www.laws.gov.ag/acts/2004/a2004-21.pdf ..................................................................14

Securities Exchange Act of 1933,
    15 U.S.C. § 77b(a)(1)...............................................................................................................27

**OTHER AUTHORITIES**

Fed. R. Civ. P. 12(b)(1)...............................................................................................................1

Fed. R. Civ. P. 12(b)(2)...............................................................................................................1

Fed. R. Civ. P. 12(b)(6)...............................................................................................................1

## INTRODUCTION

Antigua and Barbuda[1] respectfully moves this Court to dismiss the Complaint under Rule 12(b)(1) and Rule 12(b)(2) for want of subject matter and personal jurisdiction based on foreign sovereign immunity and under Rule 12(b)(6) for failure to state a claim.

## SUMMARY OF ARGUMENT

Antigua and Barbuda moves to dismiss the Complaint for lack of jurisdiction based on foreign sovereign immunity and for failure to state a claim.[2]  In their rambling, 74-page, 275-paragraph Complaint, Plaintiffs assert claims seeking damages in excess of $24 billion from Antigua and Barbuda, a sovereign foreign state that is immune from suit under the Foreign Sovereign Immunities Act (FSIA), 28 U.S.C. § 1602 *et seq.*  Although naming Antigua and Barbuda as the only Defendant, Plaintiffs lard their Complaint with narration of a complex scheme by nonparties to obscure the paucity of their allegations against Antigua and Barbuda for alleged violations of the Racketeer Influenced and Corrupt Organizations Act (RICO), 18 U.S.C. § 1961 *et seq.*; aiding and abetting fraud; and avoidance.  To that end, Plaintiffs attempt to hold Antigua and Barbuda liable for the wrongful conduct by nonparties R. Allen Stanford and his alleged co-conspirators James Davis, Laura Pendergast-Holt, and Leroy King (the "Co-Conspirators"), and nonparty businesses such as Stanford International Bank Ltd. ("SIBL") and Stanford Financial Group ("SFG").  These nonparties are expressly alleged to have caused Plaintiffs to lose their investments in certificates of deposit ("CDs") issued by SIBL.  The Seventh Circuit's criticism of a similarly defective case dismissed by a district court is on point

---

[1] Plaintiffs misname Defendant as "Commonwealth of Antigua and Barbuda."  Defendant's official name is Antigua and Barbuda.

[2] Plaintiffs have failed to plead claims that qualify under any exception to FSIA immunity; thus, Antigua and Barbuda bases this motion on the face of the Complaint.  Antigua and Barbuda expressly reserves the right to challenge the jurisdictional facts asserted in the Complaint.  In addition, Antigua and Barbuda asserts that if this Court has jurisdiction, dismissal is independently warranted based on *forum non conveniens.*  If the Court asserts jurisdiction, Antigua and Barbuda will promptly file such a motion.

here: "Adding more warts to the hog still does not make it a dragon." *J.D. Marshall Int'l, Inc. v. Redstart, Inc.*, 935 F.2d 815, 821 (7th Cir. 1991).

**1.  Lack of jurisdiction based on foreign sovereign immunity.**

Antigua and Barbuda is a foreign state immune from suit under the FSIA.  The FSIA confers presumptive immunity on foreign states from all burdens of suit.  28 U.S.C. § 1604.  To overcome this presumption, Plaintiffs must allege facts meeting one of the narrow, strictly construed exception to immunity.  They have alleged three exceptions—commercial activity, expropriation, and waiver.  *See id.* § 1605(1), (2) & (3).  None is applicable to the pleaded facts.

The relevant provision of the commercial activity exception operates only where a plaintiff brings a claim based upon an act by a foreign state in connection with its commercial activity that has a direct effect in the United States.  Plaintiffs' Complaint fails every aspect of this test.  Their claims are not based on acts undertaken in Antigua and Barbuda's name and on its actual authority, as the FSIA requires.  The Complaint makes numerous allegations of fraud by Stanford or the Co-Conspirators, but the FSIA obligates Plaintiffs to assert claims based upon the acts of Antigua and Barbuda, not the acts of others.  Similarly, claims against Antigua and Barbuda cannot be based on the acts of the Financial Services Regulatory Commission ("FSRC"), a distinct statutory entity and instrumentality of Antigua and Barbuda, or the acts of Leroy King, who, as the Complaint makes plain, acted contrary to law and outside his authority as the FSRC's former Administrator.  The few allegations actually setting forth acts by Antigua and Barbuda—primarily contracting for, guaranteeing, or approving commercial loans and development projects—are wholly unrelated to any alleged wrongdoing by the FSRC or King that could support Plaintiffs' RICO or fraud claims.  Equally fundamental, Plaintiffs' claims are not connected with any of Antigua and Barbuda's commercial activities.  Commercial activities

are those of a market participant, as distinct from sovereign activities which include those of a market regulator. Here, the line is clear—Plaintiffs sue Antigua and Barbuda not for acts in connection with market participation, but for purported fraud in FSRC's supervision of SIBL. Finally, Plaintiffs fail to allege a direct effect in the United States resulting from any asserted act by Antigua and Barbuda. A direct effect must flow in a continuous, straight line from the act to the result, without interruption or deviation. Many of Plaintiffs' alleged effects are indirect, if causally related at all, such as the initiation of the action against Stanford by the Securities and Exchange Commission ("SEC") or the collapse of SFG. Others are not effects at all, such as the location of Stanford and his various companies. Notably, the losses suffered by Plaintiffs are legally insufficient to give rise to a direct effect. And, in any case, Stanford and the Co-Conspirators are intervening and primarily responsible actors with respect to all claimed injury.

Similarly, neither the expropriation nor the waiver exception applies to the facts alleged in the Complaint. As to the expropriation exception, the Complaint pleads that after Stanford's frauds were revealed and his empire collapsed, Antigua and Barbuda acquired land owned by SFG in Antigua and Barbuda. This sovereign act does not qualify under the expropriation exception because (a) the exception applies only to property rights in the United States, and (b) Plaintiffs' property was not taken. Finally, Plaintiffs make no allegations at all regarding waiver. Because Plaintiffs fail to plead facts that support any exception to Antigua and Barbuda's presumptive sovereign immunity, this Court must dismiss the Complaint.

**2. Failure to state a claim on which the Court may grant relief.**

To the extent the Court does not dismiss the Complaint based on Antigua and Barbuda's sovereign immunity, it should dismiss it for failure to state a claim. RICO does not apply to predominately extraterritorial conduct. Congress did not provide for RICO's extraterritorial

application, and that silence creates a presumption that RICO does not apply to conduct—like that alleged in the Complaint—occurring mostly outside of the United States. In addition, RICO claims cannot be asserted against foreign states. Sovereigns are incapable of committing indictable criminal acts necessary to make out a pattern of racketeering activity on which Plaintiffs must base their claims. Relatedly, sovereign states are incapable of forming the scienter necessary for aiding and abetting liability. Further, RICO expressly excludes civil claims alleging fraud in the sale of securities, such as SIBL CDs. Thus, Plaintiffs' RICO claims fail because they are premised upon improper extraterritorial application of RICO to a sovereign defendant based on transactions expressly excluded from RICO's civil cause of action. Finally, under the Act of State Doctrine, the Court should not adjudicate Antigua and Barbuda's taking of land in Antigua and Barbuda pursuant to its laws. Because Plaintiffs cannot cure these defects, the Court should dismiss the Complaint with prejudice.

## I. FOREIGN SOVEREIGN IMMUNITY

This Court lacks both subject matter and personal jurisdiction because Antigua and Barbuda is immune from suit under the FSIA. Plaintiffs fail to plead facts sufficient to sustain the commercial activity, expropriation, or waiver exceptions to such immunity.

### 1. Plaintiffs' complaint suffers from prolixity without substance.

Plaintiffs attempt to distract from the deficiency and paucity of allegations against Antigua and Barbuda by pleading voluminous details about the acts of Stanford and his Co-Conspirators. *See* Compl. ¶¶ 1-2, 19-22, 43-45, 49-50, 52-53, 55-59, 61-65, 67-74, 76-81, 83-88, 90-95, 210-12. Plaintiffs' claims arise from Stanford's fraudulent scheme, allegedly perpetrated through the sale of SIBL CDs. SIBL was an offshore bank regulated by the FSRC, a distinct statutory entity within Antigua and Barbuda. To implicate Antigua and Barbuda, Plaintiffs

hypothesize an unbounded conspiracy, one aspect of which was the purported failure of the FSRC to examine SIBL and prevent the loss of Plaintiffs' investments.

Plaintiffs' guilt-by-association pleading is insufficient to support the exercise of jurisdiction over a foreign sovereign.  In affirming dismissal of a similarly vague and prolix RICO complaint, the Fifth Circuit rebuked the plaintiffs in *Old Time Enterprises, Inc. v. International Coffee Co.*, 862 F.2d 1213 (5th Cir. 1998), where the Complaint similarly embodied:

> a perhaps somewhat fervid desire to cover all even remotely conceivable theories while retaining a level of generality and indefiniteness that would mask any legal deficiencies and preclude effective challenge.  That . . . only leads to essentially nothing being alleged, for the needle in the haystack might as well not be there.

*Id.* at 1220.  Such concerns are magnified with respect to generalized allegations of fraud against a foreign state because broad, omnibus claims against sovereigns "cannot be proved without massive, intrusive discovery in [the foreign state] on highly sensitive domestic issues." *Arriba Ltd. v. Petroleos Mexicanos*, 962 F.2d 528, 536 (5th Cir. 1992).  Even more, identifying a defendant's specific acts in detail is "particularly important in cases where the predicate fraud allegations provide the only link to federal jurisdiction." *Cayman Exploration Corp. v. United Gas Pipe Line*, 873 F.2d 1357, 1362 (10th Cir. 1989).

Plaintiffs' numerous irrelevant allegations of acts by Stanford and the Co-Conspirators underscore the absence of any specific allegations about acts by Antigua and Barbuda. Plaintiffs' allegations follow a set pattern:  they allege specific conduct by Stanford and the Co-Conspirators; then they generally aver "on information and belief" that Antigua and Barbuda knew of and assisted in those acts, without any further basis in fact.  Compl. ¶¶ 46, 48, 51, 54, 60, 66, 75, 82, 89, 96, 103, 116, 134, 142, 146.  Such allegations are inadequate.  At minimum, "allegations [made on information and belief] must be accompanied by a statement of the facts

upon which the belief is based." *DiVittorio v. Equidyne Extractive Indus., Inc.*, 822 F.2d 1242, 1247 (2d Cir. 1987).   In other sections, Plaintiffs repetitively recite conclusory phrases like "directing, approving, and/or otherwise participating in"; "committed and/or aided and abetted"; or "together with Antigua and Barbuda" before an allegation of a specific act of Stanford, a Stanford entity, or the broadly defined Stanford Enterprises.  *See, e.g.*, Compl. ¶¶ 47, 165, 219(a)-(p), 235(a)-(o) 222; 238.[3]  Such drive-by pleading techniques are always insufficient, but never more so than in pleadings against foreign sovereigns, which require "[d]ue respect for the actions taken by foreign sovereigns and . . . principles of comity between nations." *First Nat'l City Bank v. Banco Para El Comercio*, 462 U.S. 611, 626 (1983) (hereinafter "*Bancec*").

### 2. Antigua and Barbuda is immune under the Foreign Sovereign Immunities Act.

This Court lacks jurisdiction over claims against Antigua and Barbuda.  "In the United States, there is only one way for a court to obtain jurisdiction over a foreign state and it is not a particularly generous one—the FSIA." *Peterson v. Royal Kingdom of Saudi Arabia*, 416 F.3d 83, 86 (D.C. Cir. 2005).  The FSIA provides that a foreign sovereign state "shall be immune from the jurisdiction of the courts of the United States" unless a statutory exceptions applies.  28 U.S.C. § 1604; *Permanent Mission of India v. City of N.Y.*, 127 S. Ct. 2352, 2355 (2007); *Dale v. Colagiovanni*, 443 F.3d 425, 427-28 (5th Cir. 2006).  "[A] party claiming FSIA immunity . . . need only present a prima facie case that it is a foreign state; and, if it does, the burden shifts to the party opposing immunity to present evidence that one of the exceptions to immunity applies." *Kelly v. Syria Shell Petroleum Dev. B.V.*, 213 F.3d 841, 847 (5th Cir. 2000).  Where the plaintiff fails to meet this threshold, sovereign immunity is a complete defense and precludes

---

[3] Courts consistently reject this practice of "lumping" allegations against multiple defendants. *See, e.g.*, *DeSisto Coll., Inc. v. Line*, 888 F.2d 755, 761, 764 (11th Cir. 1989) ("separate the facts against each defendant").

subjecting the sovereign to any burdens of litigation. *Id.* at 849; *see United States v. Moats*, 961 F.2d 1198, 1203 (5th Cir. 1992).[4]

Plaintiffs concede that Antigua and Barbuda is a sovereign state, Compl. ¶ 14, which is thus presumptively immune from this Court's jurisdiction unless Plaintiffs articulate specific facts establishing that the claims asserted arise within one of the narrow, enumerated FSIA exceptions. Plaintiffs invoke three such exceptions, each of which they fail to meet: (1) commercial activity; (2) expropriation; and (3) waiver. *Id.* ¶ 32.

**a.      Plaintiffs fail to allege facts giving rise to the commercial activity exception.**

Plaintiffs grant that their claims can satisfy the "commercial activity" exception only if they qualify under its third clause, which requires an action "based . . . upon an act outside the territory of the United States in connection with a commercial activity of the foreign state elsewhere and that act causes a direct effect in the United States." 28 U.S.C. § 1605(a)(2); *see* Compl. ¶ 209. Under this clause, "[n]ot only must there be a jurisdictional nexus between the United States and the commercial acts of the foreign sovereign, there must be a connection between the plaintiff's cause of action and the commercial acts of the foreign sovereign." *Stena Rederi AB v. Petroleros Mexicana*, 923 F.2d 380, 386 (5th Cir. 1991). Plaintiffs plead a litany of purported acts and effects, *see* Compl. ¶¶ 210-12, but they fail to base their claims on any particular act by Antigua and Barbuda in connection with its commercial activity that resulted in a direct effect in the United States.

---

[4] Under 28 U.S.C. § 1330(a), the courts have subject matter jurisdiction only for nonjury civil actions against non-immune sovereigns, and under § 1330(b), "personal jurisdiction, like subject-matter jurisdiction, exists only when one of the exceptions to foreign sovereign immunity in §§ 1605-07 applies." *Argentine Republic v. Amerada Hess*, 488 U.S. 428, 434 n.3 (1989).

### i.  Plaintiffs cannot base their claims upon acts not by or attributable to Antigua and Barbuda.

Plaintiffs expend great length detailing acts by Stanford, the Co-Conspirators, SIBL, and SFG.  For jurisdictional purposes, such acts are immaterial, as they are not acts by or attributable to Antigua and Barbuda.  *See Dale*, 443 F.3d at 428 ("The provision makes clear that the commercial activity must be that '*of the foreign state*.'" (emphasis preserved)); *accord Saudi Arabia v. Nelson*, 507 U.S. 349, 357-58 (1993) ("the phrase [based upon] is read most naturally to mean those elements of a claim that, if proven, would entitle a plaintiff to relief under his theory of the case").  Moreover, "'based upon' requires a degree of closeness between the acts giving rise to the cause of action and those needed to establish jurisdiction that is considerably greater than common law causation requirements."  *Transatl. Shiffahrtskontor GmbH v. Shanghai Foreign Trade Corp.*, 204 F.3d 384, 390 (2d Cir. 2000).

The "based upon" requirement thus obligates the Court to "focus[] on the acts of the named defendant, not on other acts that may have had a causal connection with the suit."  *de Sanchez v. Banco Cent. De Nicar.*, 770 F.2d 1385, 1391 (5th Cir. 1985).  Significantly, the relevant jurisdictional act must be that of the foreign state taken on actual authority in the name of the sovereign state.  *Dale*, 443 F.3d at 428 ("An agent acting with apparent authority is insufficient to trigger the commercial activity exception and give a basis for jurisdiction against the state under FSIA.").  Tort standards of vicarious liability are inapplicable to the commercial activity exception.  *See Samantar v. Yousef*, 130 S. Ct. 2278, 2288 (2010); *MCI Telecomm. Corp. v. Alhadhood*, 82 F.3d 658, 664 (5th Cir. 1996).[5]

---

[5] The absence of an express vicarious liability provision within the commercial activity exception is compelling when juxtaposed to the provision established in the noncommercial tort exception.  *Samantar*, 130 S. Ct. at 2288 (citing *Kimbrough v. United States*, 552 U.S. 85, 103 (2007)).  In *Samantar*, the Supreme Court observed that "elsewhere in the FSIA, Congress expressly mentioned officials when it wished to count their acts as equivalent to

Here, Plaintiffs fail to allege relevant acts by or attributable to Antigua and Barbuda.  As described above, nearly all of Plaintiffs' allegations regarding Antigua and Barbuda are conclusory—"on information and belief"; "knew of and assisted in"; "directing, approving, and/or otherwise participating in"; "committed and/or aided and abetted"—and even in that form, they allege no actual acts by Antigua and Barbuda.  While Antigua and Barbuda itself is alleged to have committed a handful of the acts specified in the Complaint,[6] the gravamen of Plaintiffs' claims are not based on those acts.  Rather, to the extent there is any linkage to Antiguan and Barbudan persons or entities, the claims are based on alleged fraud by King and failures by the FRSC; although, they are based principally on frauds by Stanford and the Co-Conspirators.  Antigua and Barbuda cannot be sued on the basis of those acts.

1. **Plaintiffs' RICO claims, which must be based on "indictable" criminal acts, cannot be based on an act of Antigua and Barbuda because it is not indictable.**

RICO liability must be predicated upon an "indictable" criminal act.  Because Antigua and Barbuda cannot be indicted, Plaintiffs' civil RICO claims cannot arise from acts of Antigua and Barbuda itself.  To recover for civil RICO claims, the plaintiff must show that the defendant engaged in "a pattern of racketeering activity."  *Abraham v. Singh*, 480 F.3d 351, 355 (5th Cir. 2007).  "[R]acketeering activity" is defined as "any act which is indictable" under several enumerated federal statutes, including the mail and wire fraud statutes.  28 U.S.C. § 1961(1)(B).

---

those of the foreign state," cross-referencing the noncommercial tort exception that covers an "act or omission of that foreign state or of any official or employee."  *Id.*; *accord MCI Telecomm.*, 82 F.3d at 664 (denying applicability of commercial activities exception where plaintiffs were really "attempt[ing] to apply the 'tortious activities' exception to the FSIA, since it involves the actions of the UAE's 'employees'"); *Arriba*, 962 F.2d at 535 (denying same where "[w]hat [plaintiff] seeks is more properly characterized as joint and several liability for conspiracy or tort, respondeat superior, or agency liability").

[6] As discussed in subsequent sections, while Plaintiffs allege (incorrectly) Antigua and Barbuda's non-payment of certain loans, Compl. ¶¶ 100-132, their claims are not "based upon" any unpaid debts.  The other legislative or executive acts mentioned in the Complaint, *e.g., id.* ¶¶ 136-139, were not in connection with commerce.

A proximate causal relation must exist between those RICO predicate acts and the plaintiff's injury. *E.g., Old Time Enters.*, 862 F.2d at 1218.

Foreign sovereigns cannot be indicted for crimes. The FSIA "does not limit [its] grant of immunity to civil cases," and it provides no exception for criminal indictment. *Keller v. Cent. Bank of Nigeria*, 277 F.3d 811, 820 (6th Cir. 2002); *Gould, Inc. v. Mitsui Mining & Smelting Co.*, 750 F. Supp. 838, 844 (N.D. Ohio 1990) ("since the FSIA is the only method of obtaining jurisdiction over foreign sovereigns, and § 1330(a) refers only to civil, and not criminal, actions there is no criminal jurisdiction over . . . an agency of the French government").

Civil RICO claims may not be maintained against governmental bodies that are not indictable. *McNeily v. United States*, 6 F.3d 343, 350 (5th Cir. 1993) (Federal Deposit Insurance Corporation not indictable and thus not liable under RICO); *Lancaster Cmty. Hosp. v. Antelope Valley Hosp. Dist.*, 940 F.2d 397, 405-05 (9th Cir. 1991) (dismissing RICO claims against government because it could not form requisite intent to commit predicate acts). In *Keller*, the Sixth Circuit held that "a foreign sovereign is not indictable, and therefore not amenable to civil RICO claims." 277 F.3d at 821;[7] *Gould*, 750 F. Supp. at 844 ("the court concludes that the kind of fraud covered by § 1961(1)(B) (including mail and wire fraud) is criminal fraud, and such criminal fraud can constitute a predicate act under RICO only if the defendant in question could be prosecuted for that fraud"). Following this precedent, the district court in *Dale v. Colagiovanni* dismissed RICO claims against the Vatican based on FSIA immunity:

---

[7] While *Keller* was abrogated on other grounds by *Samantar*, the relevant holding of *Keller* remains viable; indeed the holding of *Samantar* supports Antigua and Barbuda's immunity here. *Samantar* abrogated *Keller* with respect to the unrelated holding that an official may not claim sovereign immunity for acts taken in his official capacity. 130 S. Ct. at 2286. Thus *Samantar* in fact supports the relevant proposition of *Keller*. While individuals can be indicted for predicate RICO violations, sovereign states cannot. Thus, immunizing foreign states while denying immunity to individuals harmonizes the extent of FSIA immunity with the reach of RICO. As the court in *Keller* explained, "for individuals who commit criminal acts; such unlawfulness may indicate that they were acting without the authority of the sovereign." 277 F.3d at 821 (citing *Brown v. Nationsbank Corp.*, 188 F.3d 579, 587 (5th Cir. 1999) (entertaining civil RICO claims against FBI agents, but not against the FBI)).

> Based on the provisions of 28 U.S.C. § 1330(a) and 28 U.S.C. § 1604, this Court finds that the Vatican is not a 'chargeable' or 'indictable' entity.  Because susceptibility to being charged or indicted is a prerequisite to civil liability under 18 U.S.C. § 1962(c), the Court also finds that the Vatican is immune from liability under § 1962(c), and that claim against the Vatican must be dismissed.

337 F. Supp. 2d 825, 842 (S.D. Miss. 2004), *aff'd in part, vacated & remanded in part on other grounds,* 443 F.3d 425.[8]

Here, Plaintiffs allege a civil RICO claim in which they assert that Antigua and Barbuda committed mail and wire fraud.  Compl. ¶¶ 218, 221, 227(b) & (c), 234.  Antigua and Barbuda is not indictable for those alleged criminal acts; therefore, Plaintiffs cannot identify any predicate indictable acts by Antigua and Barbuda on which to based their RICO claims.  Because their claims cannot be based upon an act of Antigua and Barbuda, the commercial activity exception is not applicable.[9]

### 2.    Acts by the FSRC cannot deprive Antigua and Barbuda of immunity.

No exception to Antigua and Barbuda's immunity can be premised on acts of the FSRC.  "[T]he acts of an agent . . . cannot be attributed to a foreign sovereign for purposes of sovereign immunity; 'it is the acts of the foreign government that determine whether the foreign acts are commercial within the meaning of the FSIA.'"  *Amorrortu v. Republic of Peru,* 570 F. Supp. 2d 916, 922 n.4 (S.D. Tex. 2008) (citing *Can-Am Int'l, LLC v. Republic of Trin. & Tobago,* 169 F. App'x 396, 405-06 (5th Cir. 2006)); *Foremost-McKesson v. Islamic Republic of Iran,* 905 F.2d 438, 446 (D.C. Cir. 1990) (holding that FSIA intended to "separat[e] the liabilities of one state instrumentality from those of another or from those of the state").  In *Bancec,* the Supreme Court

---

[8] The Tenth Circuit reached the opposite conclusion in *Southway v. Cent. Bank of Nigeria,* 198 F.3d 1210, 1214 (10th Cir. 1999).  But its determination is flawed because it failed to identify any statutory basis for federal jurisdiction to issue criminal indictments against foreign states such that they could engage in "indictable" acts.

[9] As discussed below, that Antigua and Barbuda is not indictable is also a ground for dismissal for failure to state a claim.

held that "government instrumentalities established as juridical entities distinct and independent

from their sovereign should normally be treated as such." 462 U.S. at 626-27. Following that

ruling, courts have uniformly held that sovereign states do not forfeit immunity based on the acts

of distinct instrumentalities or agencies, unless the plaintiffs make a strong showing of an alter-

ego principal-agency[10] relationship or a manifest injustice. *Can-Am Int'l*, 169 F. App'x at 405-

06. The exceptions recognized in *Bancec* "serve as exceptions to the rule that a foreign

sovereign is not amenable to suit based on the acts of such instrumentality." *Transam. Leasing,*

*Inc. v. La Republica De Venez.*, 200 F.3d 843, 848 (D.C. Cir. 2000); *see Amorrortu*, 570 F. Supp.

2d at 923 (government-owned oil company's "actions in a commercial market are not

attributable to the Republic of Peru itself for purposes of sovereign immunity").

To show a sufficient principal-agency relationship to apply the commercial activity

exception to immunity based upon the acts of an instrumentality, "the pivotal issue is whether the

[state] exercised control over the day-to-day activities of the [instrumentality]." *Gabay v.*

*Mostazafan Found. of Iran*, 968 F. Supp. 895, 899 (S.D.N.Y. 1997); *accord Hester*, 879 F.2d at

181 (refusing to bind foreign state to act of its instrumentality where "[plaintiffs] do not

demonstrate that the [state] was involved in the day-to-day management of [the instrumentality]

with regard to the [relevant commercial] project"). Plaintiffs bear the burden of overcoming "the

presumption of separate juridical status." *Foremost-McKesson*, 905 F.2d at 447-48; *see Oster v.*

*Republic of S. Afr.*, 530 F. Supp. 2d 92, 97 (D.D.C. 2007) ("When the complaint rests on

---

[10] In this analysis, the term *agency* has dual roles. As the Fifth Circuit explained: FSIA defines *agency* "to determine whether an 'agency' of the state may potentially qualify for foreign sovereign immunity itself under the FSIA. This is a completely different question from . . . whether or not the [agency] enjoyed an alter ego relationship with the [state] so that it could bind [the state] to a contract." *Hester Int'l Corp. v. Fed. Republic of Nigeria*, 879 F.2d 170, 176 n.5 (5th Cir. 1989). "[T]he level of state control required to establish an 'alter ego' relationship is more extensive than that required to establish FSIA 'agency.'" *Id.*

conclusory allegations, the plaintiff must provide further proof of government involvement in order to overcome the presumption of juridical separateness.").

Here, Plaintiffs make numerous allegations against Antigua and Barbuda founded on conduct of the FSRC. *E.g.*, Compl. ¶¶ 153-64, 166-67, 175-76, 186, 188, 199, 205. And, they acknowledge that the FSRC is an instrumentality of Antigua and Barbuda. *Id.* ¶ 151. Yet, they fail to allege that Antigua and Barbuda has day-to-day control over it, and they cannot do so. Under the laws of Antigua and Barbuda, the FSRC is a statutory entity that has the capacity to sue and be sued, to enter into contracts, to manage its own budget and finances, and to own property. International Banking Corporations Act (IBC Act) § 316(2), (13), http://www.fsrc.gov.ag/ (consolidated IBC Act; follow "About Us" drop-down menu; then select "Legislation")[11] ("The Commission shall be a body corporate . . . having the capacity to sue and be sued in its own name and the capacity to do anything and enter into any transaction"). It is overseen by a four-person Board of Directors, one of whom is the Chairman. The Board makes decisions by majority vote, with the Chairman breaking a tie. *Id.* § 316(5). The FSRC does not operate with day-to-day input from the government or the Minister of Finance (or even the Board), but instead is run by an Administrator. *Id.* §§ 318-350.[12] While it is an agency or instrumentality of Antigua and Barbuda, that does not render its acts attributable to Antigua and Barbuda for purposes of exceptions to FSIA immunity. *See, e.g., Hester Int'l Corp.*, 879 F.2d at 176 n.2; *Amorrortu*, 570 F. Supp. 2d at 923. Absent a showing that the FSRC's separate

---

[11] The original IBC Act and its amendments are available at http://www.laws.gov.ag/acts/acts-abc.htm#I (follow hyperlinks 30 to 41).

[12] Prior to 2004, the Administrator was an *ex officio* member of the Board, at times with or without voting rights. IBC (Amendment) Act, 2000, § 4(b), http://www.laws.gov.ag/acts/2000/a2000-2.pdf; IBC (Amendment) Act 2002, § 2(b), http://www.laws.gov.ag/acts/2002/a2002-10.pdf. Since 2004, however, the Administrator has not been a member of the Board. IBC (Amendment) Act, 2004, § 5, http://www.laws.gov.ag/acts/2004/a2004-5.pdf.

statutory existence should be set aside, and no such reason is alleged, Plaintiffs improperly attribute the acts of the FSRC to Antigua and Barbuda.

### 3.    The *ultra vires* acts of King cannot breach Antigua and Barbuda's immunity.

Antigua and Barbuda cannot be liable based upon the acts of King, the FSRC's former Administrator.  By allegedly accepting bribes from Stanford for personal gain, King patently acted outside of his actual authority.  To trigger the commercial activity exception to sovereign immunity, an agent must act for the state with actual authority.  *E.g., Dale*, 443 F.3d at 428; *see Jungquist v. Al Nayhan*, 115 F.3d 1020, 1028 (D.C. Cir. 1997) (granting sovereign immunity to the state but denying it to an individual because "enter[ing] into a corrupt bargain" was "not in furtherance of the interests of the sovereign but a personal and private action," even though "there was some convergence between . . . official and unofficial conduct").

Antigua and Barbuda cannot be liable for King's acceptance of bribes (or, as discussed below, his allegedly fraudulent responses to SEC inquiries) because they were not based upon actual authority granted by Antigua and Barbuda.  Plaintiffs do not and cannot allege that the bribes were paid to Antigua and Barbuda or the FSRC and do not and cannot allege that King acted, in accepting them, with actual authority.  In fact, King was not employed by Antigua and Barbuda when he accepted those bribes; he was employed by the FSRC, which, as explained above, is a distinct entity.  To the contrary, Plaintiffs aver that King accepted bribes for his own benefit. *See* Compl. ¶¶ 160, 168-204.  If these allegations are true, King acted beyond the scope of his actual authority for the FSRC and in violation of the laws of Antigua and Barbuda. *See* Integrity in Public Life Act, 2004, Part V, § 26, http://www.laws.gov.ag/acts/2004/a2004-23.pdf, and the Prevention of Corruption Act, 2004, § 3(1), http://www.laws.gov.ag/acts/2004/a2004-

21.pdf. Thus, King's alleged acceptance of bribes and related corruption was not an act of
Antigua and Barbuda. *See Keller*, 277 F.3d at 821; *Jungquist*, 115 F.3d at 1028.[13]

### ii. Plaintiffs fail to allege any relevant commercial activity by Antigua and Barbuda.

Plaintiffs' claims against Antigua and Barbuda must be dismissed because they are not
based on an act by Antigua and Barbuda in connection with its commercial activity.
"Commercial activity" means "either a regular course of commercial conduct or a particular
commercial transaction or act" and is "determined by reference to the nature of the course of
conduct or particular transaction or act, rather than by reference to its purpose." 28 U.S.C.
§ 1603(d). As the Supreme Court explained in *Nelson*, "a foreign state engages in commercial
activity . . . only where it acts 'in the manner of a private player within' the market." 507 U.S. at
360. At base, "the issue is whether the particular actions that the foreign state performs
(whatever the motive behind them) are the type of actions by which a private party engages in
trade and traffic or commerce." *Republic of Arg. v. Weltover*, 504 U.S. 607, 614 (1992)
(quotation marks omitted). The statutory term "in connection with" is "a term of art" that the
courts interpret "narrowly." *Garb v. Republic of Pol.*, 440 F.3d 579, 587 (2d Cir. 2006). The
Fifth Circuit has held that a plaintiff failed to satisfy the "in connection with" requirement where
"the few commercial acts on which [it] relies for its argument that [the defendant] has no
sovereign immunity are unrelated to the facts on which [it] relies for its causes of action." *Stena
Rederi*, 923 F.2d at 387.

---

[13] Even if they were somehow attributable to Antigua and Barbuda, bribes are not activity that the commercial
activity exception entails. *MCI Telecom Corp.*, 82 F.3d at 664 ("Even if we were to attempt to apply the
commercial activity exception, the nature of the calls, which are stolen, could not be found to be 'commercial.'"); *In
re Terrorism Attacks on Sept. 11, 2001*, 349 F. Supp. 2d 765, 793 (S.D.N.Y. 2005) ("for purposes of the FSIA, a
commercial activity must be one in which a private party can engage lawfully").

In analyzing alleged commercial activity, courts "avoid artful pleading of plaintiffs" and focus on the claim's "core," "gravamen," and "true essence"—the "ultimate issue of the activities alleged to be commercial in nature." *O'Bryan v. Holy See*, 556 F.3d 361, 372 (6th Cir. 2009); *Callejo v. Bancomer, S. A.*, 764 F. 2d 1101, 1109 (5th Cir. 1985). Thus, broad allegations identifying general commercial conduct that is not closely in connection with the act on which the plaintiffs' claims are based must be rejected. *See Jungquist*, 115 F.3d at 1028 (upholding immunity where plaintiffs "confuse general activity related to the claim with the specific activity upon which the claim is based").[14]

Here, to survive dismissal on immunity grounds the gravamen of the Complaint against Antigua and Barbuda must be connected to commercial activity. Instead, it is based on the FSRC's purported failing in regulating SIBL. Plaintiffs reveal their core claim in the first numbered paragraph: "This is an action to recover billions of dollars of losses suffered by innocent and unsuspecting customers from around the world who entrusted their money to R. Allen Stanford's Stanford International Bank, Ltd." Compl. ¶ 1. Antigua and Barbuda itself had no relation to or responsibility for the activity and conduct of SIBL. And, Plaintiffs have no standing to assert claims based upon any transactions between SIBL and Antigua and Barbuda.[15] Thus, the only connection between Antigua and Barbuda and Plaintiffs' asserted losses necessarily arises from the FSRC's regulation of SIBL. Even if the acts of the FSRC and King were attributable to Antigua and Barbuda (which for reasons stated above, they are not), Plaintiffs' pleading would be impermissibly premised on governmental, not commercial acts.

---

[14] "In contrast to Plaintiffs' allegations, cases where the commercial activity exception has been applied are those where the claims arise directly out of actual commercial activities. *Allen v. Russian Fed.*, 522 F. Supp. 2d 167, 188-89 (D.D.C. 2007); *see, e.g., Foremost-McKesson*, 905 F.2d at 449-50 (dispute between government majority and private minority shareholders).

[15] As claimed creditors of SIBL, Plaintiffs are not third-party beneficiaries of any contracts with Antigua and Barbuda, and they do not have or assert any claims based on contractual or commercial debt owed by Antigua and Barbuda.

Abuses of state power "do not undermine the state's sovereign immunity, regardless of how barbarous the state action." *Youming Jin v. Ministry of State Sec.*, 475 F. Supp. 2d 54, 65 (D.D.C. 2007).

Plaintiffs improperly attempt to classify governmental acts as commercial based on irrelevant allegations regarding Antigua and Barbuda's supposed motives.[16] *See Nelson*, 507 U.S. at 360-61 (relevant inquiry is *not* profit motive).   Nonetheless, Plaintiffs' claims fundamentally plead alleged regulatory failures and corruption at the FSRC. *E.g.,* Compl. ¶ 46 (representations regarding regulatory audits), ¶ 51 (representations regarding scrutiny by FSRC), ¶ 60 (concealing loans from investors and regulators), ¶ 66 (FSRC review and scrutiny), ¶ 75 (concealing real estate transfers), ¶ 82 (concealing tiered SIBL investments), ¶ 96 (concealing exposure to losses from Madoff investments), ¶¶ 153-54 (representations about regulations), ¶¶ 155-56 ("essential" aspect of conspiracy was representation of regulation), ¶¶ 157-59 (SIBL reports of regulation), ¶ 160 (bribes to ensure lack of regulation), ¶ 161 (regulatory confirmation of SIBL safety), ¶¶ 163-67 (providing information regarding foreign regulatory investigations and representations about SIBL).   It is these contended regulatory failures and Stanford's mischaracterization of its regulated status that provide the only acts on which Plaintiffs attempt to peg Antigua and Barbuda's liability for their civil RICO and fraud claims.   Yet, by definition, regulatory failures are sovereign acts—they are not acts that a private market participant can or

---

[16] Plaintiffs focus on Antigua and Barbuda's unrelated debts to or ventures with unspecified Stanford entities to distract from their asserted claims. They focus on Antigua and Barbuda's alleged and immaterial "desire to maintain the cash flow from the commercial activities that were part of Stanford's fraudulent scheme." Compl. ¶¶ 165-167, 176, 186, 188, 199, 205, 209; *see id.* ¶¶ 48, 54 ("purpose of sharing in the proceeds"); *id.* ¶ 134 ("to ensure the continuous flow of money"), *id.* ¶ 148 ("commercial activities from which they were profiting").   Even if true, however, an improper motive does not transform regulatory acts into commercial activities.   *See* § 1603(d) (commercial acts defined by "the nature of the course of conduct or particular transaction or act, rather than by reference to its purpose").

would undertake for profit.[17]   Accordingly, Plaintiffs fail to allege relevant acts in connection with Antigua and Barbuda's commercial activity.

### iii. Plaintiffs fail to allege a sufficient direct effect.

To support an exception to sovereign immunity, the commercial acts that form the basis for a plaintiff's claims must also cause a "direct effect" in the United States. 28 U.S.C. § 1605(a)(2).   To be direct, this effect must follow "'as an immediate consequence of the defendant's . . . activity,'" with "'no intervening element,'" meaning that the activity and its effect in the United States must "'flow in a straight line without deviation or interruption.'" *Princz v. Republic of Ger.*, 26 F.3d 1166, 1172 (D.C. Cir. 1994).   Even though there is no formal substantiality requirement, the "direct effect" must be more than "de minimis," as "Congress did not intend to provide jurisdiction whenever the ripples caused by an overseas transaction manage eventually to reach the shores of the United States." *United World Trade, Inc. v. Mangyshlakneft Oil Prod. Ass'n*, 33 F.3d 1232, 1238 (10th Cir. 1994).   To qualify, a specific act causing the direct effect must be legally significant to the cause of action. *See Filetech, S.A. v. Fr. Telecom S.A.*, 157 F.3d 922, 931 (2d Cir. 1998).   This requirement of direct causation bars wide-ranging claims alleging all-encompassing RICO conspiracies based on unrelated or indirect domestic effects. *Kensington Int'l Ltd. v. Itoua*, 505 F.3d 147, 156-57 (2d Cir. 2007) (shipment of oil unrelated to claims based on failure to pay separate debt).

Plaintiffs fail to allege any sufficient direct effect.   Plaintiffs admit their burden in this regard, but, the only "effects" they identify fall far short of this requirement.   They are:   (1) the broadly defined Stanford Enterprises were run from and "inextricably linked to" the economy of

---

[17] For this additional reason, Plaintiffs cannot rely on King's alleged correspondence with the SEC.   Even if attributable to Antigua and Barbuda—which they are not for the reasons set forth above—communications between market regulators are fundamentally governmental acts of market regulation, regardless of how flawed or fraudulent they are alleged to be.

the United States, Compl. ¶ 210; (2) Stanford, the Co-Conspirators, SIBL, and SFG are the subject of an SEC action, *id.* ¶ 211(a); (3) Stanford and the Co-Conspirators are under criminal indictment, *id.* ¶ 211(b); (4) the IRS may have a unspecified claim for taxes from unspecified persons, *id.* ¶ 211(c); (5) the U.S. Plaintiffs suffered losses, *id.* ¶¶ 59, 66, 211(d); (6) SFG collapsed, *id.* ¶ 211(e); and (7) Stanford provided money to Antigua and Barbuda that he had allegedly misappropriated from Plaintiffs through an undefined series of transactions, *id.* ¶ 212. Under well-established case law, none of these asserted effects provide a jurisdictional nexus to overcome Antigua and Barbuda's immunity.

The fundamental flaw in all these allegations is that these effects do not result from acts by Antigua and Barbuda, but instead from acts by Stanford and his Co-Conspirators. Plaintiffs claim an effect "in large part" because Stanford and the Co-Conspirators ran the Stanford Enterprises in the United States. The purported location of Stanford Enterprises is not an "effect" of commercial acts by Antigua and Barbuda at all. Indeed, the Complaint asserts that the fraud was planned and operated by Stanford, Davis, and Holt in the United States (not Antigua and Barbuda). Compl. ¶ 210(a) ("directed and controlled from within the United States by Stanford, Davis, and, in some instances, Holt"), ¶ 210(b) (Stanford ran his scheme "with no meaningful management input from Antigua and Barbuda"). The same conclusion is also clear for Plaintiffs' allegations regarding SFG's collapse, *id.* ¶ 211(e), and Stanford's transfer of fraudulently obtained funds, *id.* ¶ 212. The fraudulent acts of Stanford and the Co-Conspirators allegedly caused the fall of SFG, and Stanford's unilateral acts allegedly removed Plaintiffs' investments from the United States. Thus, Plaintiffs fail to allege any act by Antigua and Barbuda causing these pleaded "effects," and, in any case, Stanford and the Co-Conspirators were necessarily intervening actors.

19

Although Plaintiffs allege the existence of various legal proceedings in the United States arising from Stanford's frauds, their claims are not based on them.  Antigua and Barbuda is a party to none of those proceedings, and the initiation of those actions is not an element of or even relevant to Plaintiffs' claims.

Further, the loss of money by Plaintiffs, some of whom incidentally reside in the United States, is not a "direct effect."  Courts have repeatedly found that incidental financial loss in the United States resulting from a foreign state's activity elsewhere, without more, does not constitute a direct effect.  *Can-Am Int'l*, 169 F. App'x at 408 ("[Plaintiff's] alleged financial loss in the United States in and of itself is not enough to meet this prong of the commercial activity exception."); *Soudavar v. Islamic Republic of Iran*, 67 F. App'x 618, 619 (D.C. Cir. 2003) (finding no direct effect of foreign title transfer resulting in "mere financial loss by a resident of the United States"); *Soudavar v. Islamic Republic of Iran*, 186 F.3d 671, 674 (5th Cir. 1999) (finding lost income and tax revenue failed to qualify as direct effect of failure to pay for expropriated shares where shareholder agreement required notification in the United States); *United World Trade*, 33 F.3d at 1239 (U.S. corporation's "allegation that it lost profits and suffered other harm in the United States as a result of the defendants' actions does not meet the requirements of § 1605(a)(2)").  "If a loss to an American individual or firm resulting from a foreign tort were sufficient standing alone to satisfy the direct effect requirement, the commercial activity exception would in large part eviscerate the FSIA's provision of immunity for foreign states." *Kensington*, 505 F.3d at 158; *United World Trade*, 33 F.3d at 1239 (refusing to find direct effect for financial loss because to do so "would give the district courts jurisdiction over virtually any suit arising out of an overseas transaction in which an American citizen claims to have suffered a loss from the acts of a foreign state").

Notably, Plaintiffs plead no individual commercial relationship with Antigua and Barbuda, and thus definitionally their relationships and the effects of any alleged act of Antigua and Barbuda must be indirect. *See Virtual Countries, Inc. v. Republic of S. Afr.*, 300 F.3d 230, 240 (2d Cir. 2002) ("[n]o obligation—contractual or otherwise—ran to the plaintiff from the [defendant], let alone one to be performed in the United States"); *Agrocomplect, AD v. Republic of Iraq*, 524 F. Supp. 2d 16, 27 (D.D.C. 2007) ("any payments to be made in . . . New York City were owed to Bulgaria as the creditor of the defendant, not to the plaintiff"), *affirmed* 2008 WL 5455695 (D.C. Cir. 2008).[18] Here, some named Plaintiffs are citizens or residents of the United States; many are not. Regardless, they do not allege a direct commercial relationship with Antigua and Barbuda, and their losses do not constitute direct effects.

### b.     Plaintiffs fail to allege facts giving rise to the expropriation exception.

Plaintiffs "avoidance" claim does not allege a governmental taking that qualifies under the expropriation exception to FSIA immunity.[19] The expropriation exception applies only in narrow circumstances—as applicable here, when "rights in property" are "taken in violation of international law" and the property "is in the United States in connection with a commercial activity carried on in the United States by the foreign state." 28 U.S.C. § 1605(a)(3). To give rise to the exception, the plaintiff must have an existing right in the expropriated property. *See Amorrortu*, 570 F. Supp. 2d at 924 ("the Court is not convinced that any rights in property are

---

[18] Nor can Plaintiffs rely on any taking of property by Antigua and Barbuda in Antigua and Barbuda. An involuntary expropriation of property is not a commercial activity. *E.g., Garb*, 440 F.3d at 32; *Soudavar*, 67 F. App'x at 619; *de Sanchez*, 770 F.2d at 1398; *Amorrortu*, 570 F. Supp. 2d at 923.

[19] This Court should look beyond Plaintiffs' attempts at artful pleading of "avoidance" and should instead hold that this claim is essentially for expropriation—the taking of property—though it fails to satisfy the expropriation exception to sovereign immunity. *See de Sanchez*, 770 F.2d at 1398 ("[Plaintiff]'s claim, although sounding in tort, is essentially a claim for an unjust taking of property . . . . We do not believe that Congress intended plaintiffs to be able to rephrase their takings claims in terms of conversion . . . ."); *Garb v. Republic of Pol.*, 207 F. Supp. 2d 16, 32 (E.D.N.Y. 2002) ("Plaintiffs cannot 'escape the requirements of [the expropriation exception] through artful recharacterization of their takings claims.'" (quoting *Chuidian v. Philippine Nat'l Bank*, 912 F.2d 1095, 1106 (9th Cir. 1990))).

actually in issue:  the rights complained of appear to be those of [the company], whereas the complainant is shareholder[, the plaintiff], proceeding individually").   This exception also imposes "a higher threshold of proof for suing foreign states in connection with alleged takings by requiring that the property at issue be 'present in the United States.'" *Garb*, 440 F.3d at 589.

Plaintiffs allege that Antigua and Barbuda seized 250 acres of land purportedly owned by SFG in February 2009.  Compl. ¶¶ 268-270.  The acquired lands were in Antigua and Barbuda, not the United States.  And, as purchasers of SIBL CDs, Plaintiffs had no existing "rights in property" to land owned by SIBL, let alone by SFG or other Stanford entities.  Nor do they point the Court to a then-existing tort claim, judgment, or lien that they could have executed on the SFG properties.  Thus, the purported seizure does not give rise to the expropriation exception.

> c.      **Plaintiffs fail to allege facts giving rise to the waiver exception.**

The waiver exception applies where "the foreign state has waived its immunity either explicitly or by implication."  28 U.S.C. § 1605(a)(1).  This exception is narrowly construed to those situations where the foreign state manifests an intention to waive FSIA immunity. *Amerada Hess*, 488 U.S. at 442-43; *Rodriguez v. Transnave Inc.*, 8 F.3d 284, 287 (5th Cir. 1993). The Complaint makes no factual allegation concerning any waiver.

Overall, Antigua and Barbuda is presumptively immune from suit, and Plaintiffs fail to raise properly the commercial activity, expropriation, or waiver exceptions; thus, this Court should dismiss the Complaint.

## II. FAILURE TO STATE A CLAIM

To the extent this Court does not dismiss based on Antigua and Barbuda's sovereign immunity, it should dismiss the entire Complaint for failure to state a claim.  Plaintiffs allege four RICO claims against Antigua and Barbuda, aiding and abetting common law fraud, and

avoidance. Each of these claims is insufficient as a matter of law. The Complaint fails to state cognizable RICO claims because (a) RICO does not apply to the predominately extraterritorial conduct alleged here; (b) RICO claims cannot be asserted against a sovereign such as Antigua and Barbuda because it cannot be indicted; and (c) civil RICO claims cannot be predicated on securities transactions. Similarly, Plaintiffs' common law claim for aiding and abetting fraud is equally meritless because a sovereign such as Antigua and Barbuda cannot form the necessary scienter to establish an aiding and abetting claim. Finally, the avoidance claim, which can only sound in expropriation, is barred by the Act of State Doctrine. While there are many additional deficiencies in Plaintiffs' Complaint, at this time Antigua and Barbuda raises only those global defenses that apply broadly, and it expressly reserves its right to raise other defenses based on Plaintiffs' failure to state a claim at appropriate stages of this litigation.[20]

## 1.  Standard of review

On a motion to dismiss for failure to state a claim, a court must assume all well-pleaded facts, but need not accept conclusory allegations. *Ramirez v. United States*, No. 3:01-CV-0717, 2004 WL 572359, *1 (N.D. Tex. Mar. 22, 2004) (citing *Kaiser Alum. & Chem. Sales, Inc. v. Avondale Shipyards, Inc.*, 677 F.2d 1045, 1050 (5th Cir. 1982)).[21] "[A] plaintiff must plead specific facts," *id.* (citing *Elliott v. Foufas*, 867 F.2d 877, 881 (5th Cir. 1991)), that amount to "more than labels and conclusions," *Bell Atl. Corp. v. Twombley*, 550 U.S. 544, 555 (2007). In

---

[20] In particular, as an immune foreign sovereign, Antigua and Barbuda seeks to avoid an unnecessary and potentially lengthy dispute regarding Plaintiffs' failure to comply with RICO pleading requirements under the individual RICO subsections. Such deficiencies include, but are not limited to, Plaintiffs' lack of standing to assert claims owned by SIBL or other Stanford entities and failure to allege "by reason of" proximate causation under section 1964(c), as well as failure to plead necessary elements of each subsection of section 1962, including failure to plead an investment into an enterprise engaged in foreign commerce under section 1962(a), failure to allege facts showing Antigua and Barbuda's operation or management of an enterprise and to allege an association-in-fact under section 1962(c), and failure to plead an agreement to violate RICO through a pattern of predicate crimes under section 1962(d).

[21] A courtesy copy of this Court's unpublished order in *Ramirez* is provided in the Appendix for the Court's convenience. Appendix, Decl. of Joshua Newcomer, Ex. 1, pages 4-6.

addition, a plaintiff must articulate sufficient facts "to raise a right to relief above the speculative level"—each claim must be "plausible on its face," not merely possible. *Twombley*, 550 U.S. at 555. Plaintiffs' Complaint fails to meet these standards.

### 2. RICO has no application to claims arising outside of the United States.

Plaintiffs' RICO claims also must be dismissed because RICO lacks extraterritorial applicability. "It is a longstanding principle of American law that legislation of Congress, unless a contrary intent appears, is meant to apply only within the territorial jurisdiction of the United States." *Morrison v. Nat'l Australian Bank Ltd.*, 130 S. Ct. 2869, 2877 (2010). The Supreme Court in *Morrison* recently clarified that "[w]hen a statute gives no clear indication of an extraterritorial application, it has none." *Id.* at 2878.

Like the Securities Exchange Act of 1934 at issue in *Morrison*, RICO contains no clear indication of an extraterritorial application. *E.g., N.-S. Fin. Corp. v. Al-Turki*, 100 F.3d 1046, 1051 (2d Cir. 1996) ("The RICO statute is silent as to any extraterritorial application."); *Cedeno v. Intech Grp., Inc.*, No. 09-Civ-9716, 2010 WL 3359468, *2 (S.D.N.Y. Aug. 25, 2010) (under the statutory focus test of *Morrison*, "nowhere does the statute evidence any concern with foreign enterprises, let alone a concern sufficiently clear to overcome the presumption against extraterritoriality").[22] After *Morrison*, every court that has ruled on the applicability of RICO to the types of extraterritorial claims alleged against Antigua and Barbuda here has denied its applicability. In *Norex Petroleum Ltd. v. Access Industries, Inc.*, the Second Circuit affirmed the dismissal of a RICO complaint "arising from allegations of a conspiracy which primarily involves foreign actors and foreign acts." 622 F.3d 148, 149 (2d Cir. 2010). The plaintiff in *Norex* alleged a massive scheme to take over the Russian oil industry and asserted that the

---

[22] A courtesy copy of the court's unpublished opinion and order in *Cedeno* is provided in Appendix for the Court's convenience. Appendix, Decl. of Joshua Newcomer, Ex. 2, pages 7-11.

defendants purportedly "committed numerous acts in the United States in furtherance of its scheme . . . including mail and wire fraud, money laundering, Hobbs Act violations, Travel Act violations and bribery." *Id.* The allegations also included "bribery of Russian governmental officials and corrupt Russian bankruptcy proceedings." *Id.* The court rejected the plaintiffs' argument that the allegations showed a sufficient connection to the United States: "simply alleging that some domestic conduct occurred cannot support a claim of domestic application" because "'[i]t is a rare case of prohibited extraterritorial application that lacks all contact with the territory of the United States.'" *Id.* at 152 (quoting *Morrison*, 130 S. Ct. at 2884). Likewise, in *Cedeno*, the court recently dismissed RICO claims that were "essentially extraterritorial in focus." 2010 WL 3359468, at *2. There, the plaintiffs alleged a broad conspiracy involving the Venezuela central bank and other governmental agencies engaged in "a wide-ranging money laundering scheme that utilized New York-based U.S. banks to hold, move and conceal the fruits of fraud, extortion, and private abuse of public authority." *Id.* The court rejected the plaintiffs' "superficial argument" that "attempt[ed] to sidestep *Morrison* by arguing that their complaint alleges predicate acts of money laundering that involved transfers into and out of this District by U.S. banks." *Id.*

This presumption against extraterritoriality is dispositive in this case. Plaintiffs' allegations against Antigua and Barbuda—the only Defendant—involve:  Antigua and Barbuda's alleged dealings with Stanford, a citizen of Antigua and Barbuda, in Antigua and Barbuda; and the regulation of SIBL, a company registered and domiciled in Antigua and Barbuda, by the FSRC, Antigua and Barbuda's independent regulator.  No act by or attributed to Antigua and Barbuda is alleged to have occurred in the United States.  Indeed, Plaintiffs' Complaint expressly alleges that Antigua and Barbuda's acts "were performed . . . outside of the United States . . . in

connection with the desire to maintain the cash flow from commercial activities in Antigua and Barbuda." ¶ 209. Thus, Plaintiffs' allegations show that their RICO claims against Antigua and Barbuda arise from allegations that primarily involve foreign actors and foreign acts. The warning issued by the *Morrison* Court has direct import here: "[T]he presumption against extraterritorial application would be a craven watchdog indeed if it retreated to its kennel whenever some domestic activity is involved in the case." 130 S. Ct. at 2884.

3. **As a sovereign state, Antigua and Barbuda cannot be liable under RICO because it is not indictable, and it cannot form the scienter necessary for aiding and abetting liability.**

As discussed above, Antigua and Barbuda cannot be liable under RICO because it cannot commit indictable acts. RICO prohibits a person from using a pattern of indictable predicate acts—*e.g.*, wire and mail fraud—to impact an enterprise in two ways which are alleged here: by using the proceeds of predicate acts to invest in an enterprise (§ 1962(a)); or by controlling an enterprise, including an association-in-fact, as a conduit for committing predicate acts (§ 1962(c)). Thus, all civil RICO claims require "a pattern of racketeering activity," *Abraham*, 480 F.3d at 355, which is defined as, *inter alia*, "any act which is indictable" as an enumerated federal crime, including mail and wire fraud. 28 U.S.C. § 1961(1)(B). Because Antigua and Barbuda cannot be indicted, it cannot engage in the criminal wire and mail fraud acts alleged in Plaintiffs' Complaint. *McNeily*, 6 F.3d at 350; *see* Compl. ¶¶ 218, 221, 227, 234.

For similar reasons, Antigua and Barbuda cannot form the requisite intent to aid and abet fraud. To plead aider and abetter liability for fraud, Plaintiffs must allege facts showing that Antigua and Barbuda "participated in the fraud as something it wished to bring about, and sought by its actions to make it succeed." *Crowe v. Henry*, 43 F.3d 198, 206 (5th Cir. 1995) (citing *Armco Indus. Credit Corp. v. SLT Warehouse Co.*, 782 F.2d 475 (5th Cir. 1986)). Mere negative acquiescence in the fraud is insufficient. *Id.* As discussed above, Antigua and Barbuda is

incapable of forming the requisite criminal intent. *Lancaster Cmty. Hosp.*, 940 F.2d at 404-05. Antigua and Barbuda cannot be liable under RICO, and it cannot form the requisite scienter to aid and abet fraud; thus Plaintiffs' fraud claims must be dismissed.

### 4. RICO claims cannot be predicated on fraud in the sale of SIBL CDs.

No claim under section 1964(c) of RICO can be predicated on claims for fraud in the purchase or sale of securities, and Plaintiffs' case is founded on their status as holders of SIBL securities. Section 1964(c) establishes a civil cause of action based on violation of RICO's criminal prohibitions under § 1962 "except that no person may rely upon any conduct that would have been actionable as fraud in the purchase or sale of securities to establish a violation of section 1962." The Fifth Circuit defines the purchase or sale of securities for these purposes in accordance with the definition supplied by Securities Exchange Acts of 1933 and 1934. *Affco Invs. 2001, LLC v. Proskauer Rose, L.L.P.*, No. 2009-20734, 2010 WL 4226685, *3 (5th Cir. Oct. 27, 2010).[23] Under those Acts, the definition of "security"[24] is quite broad, extending to the "countless and variable schemes devised by those who seek the use of the money of others on the promise of profits." *Marine Bank v. Weaver*, 455 U.S. 551, 555-56 (1982). A key element defining a security is that the investor must face the risk of loss. *Gary Plastic Pkg. Corp. v.*

---

[23] A courtesy copy of this Court's order in Ramirez is provided in Appendix for the Court's convenience. Appendix, Decl. of Joshua Newcomer, Ex. 3, pages 12-24.

[24] *See, e.g.*, 15 U.S.C. § 77b(a)(1) ("The term 'security' means any note, stock, treasury stock, bond, debenture, evidence of indebtedness, certificate of interest or participation in any profit-sharing agreement, collateral trust certificate, pre-organization certificate or subscription, transferable share, investment contract, voting trust certificate, certificate of deposit for a security, fractional undivided interest in oil, gas, or other mineral rights, or, in general, any interest or instrument commonly known as a 'security,' or any certificate of interest or participation in, temporary or interim certificate for, receipt for, guarantee of, or warrant or right to subscribe to or purchase, any of the foregoing.").

*Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 756 F.2d 230, 239 (2d Cir. 1985); *see SEC v. W.J. Howey Co.*, 328 U.S. 293, 298-99 (1946).[25]

Plaintiffs' RICO claims allege fraud in the sale of securities—SIBL CDs. Compl. ¶¶ 13, 17, 45, 50, 53, 59, 81, 227(b) & 241(b). In its action against SIBL, the SEC makes plain that the SIBL's "self-styled 'certificates of deposits'" and other "investments offered and sold by [SIBL] are 'securities.'" Second Am. Compl., *S.E.C. v. SIBL*, Case No. 3:09-cv-0298-N, ¶¶ 9, 110 (N.D. Tex.) (Doc. No. 952). Plaintiffs too assert that they invested in SIBL CDs because of "promised higher rates of return" based on SIBL's skill in selecting a "globally diversified portfolio" of assets. Compl. ¶¶ 17, 44. The CDs at issue were not insured by the FDIC or any comparable institution, and the investors clearly bore the risk of loss. *Id.* at ¶ 5 (Plaintiffs "are likely to recover only a fraction of the full amount owed to them"). Therefore, because Plaintiffs' claims are for alleged fraud in the sale of securities, Plaintiffs' RICO claims are not actionable under section 1964(c) and must be dismissed.

5. **The Court must dismiss Plaintiffs' claim of avoidance because Antigua and Barbuda's acquisition of lands in Antigua and Barbuda constituted a non-judiciable Act of State.**

Plaintiffs' final claim is for avoidance of Antigua and Barbuda's involuntary acquisition of lands in Antigua and Barbuda allegedly owned by SFG. The Act of State Doctrine bars this Court's review of Antigua and Barbuda's taking of land in Antigua and Barbuda pursuant to the laws of Antigua and Barbuda. The Doctrine received its classic expression in *Underhill v. Hernandez*, 168 U.S. 250 (1897):

> Every sovereign state is bound to respect the independence of every other sovereign state, and the courts of one country will not sit in judgment on the acts of the government of another, done within its own territory. Redress of

---

[25] Conventional FDIC-insured certificates of deposit insulate investors from any risk of loss. *Gary Plastic*, 756 F.2d at 241. Such CDs lack requisite risk necessary to make them securities. *See Marine Bank*, 455 U.S. at 555-56. But, uninsured CDs carry such risk. *Gary Plastic*, 756 F.2d at 241-42.

> grievances by reason of such acts must be obtained through the means open to be availed of by sovereign powers as between themselves.

*Id.* at 252.  Thus, "a court in the United States . . . will refrain from examining the validity of an act of a foreign state by which that state has exercised its jurisdiction to give effect to its public interest."  *Compania De Gas De Nuevo Laredo, S.A. v. Entex*, 686 F.2d 322, 326 (5th Cir. 1983); *see Callejo v. Bancomer, S.A.*, 764 F.2d 1101, 1113 (5th Cir. 1985).  For example, in *Entex*, the Fifth Circuit affirmed that dismissal of a conspiracy complaint because deciding the merits would require "a determination of the legality of the Mexican government's action in appointing an 'interventor' to take over [the plaintiff's] operations in Nuevo Laredo, and the validity of such action under Mexican law."  686 F.2d at 326.

Adjudicating Plaintiffs' avoidance claim would require this Court to assess the propriety of Antigua and Barbuda's acquisition of lands allegedly owned by SFG (not Plaintiffs) in Antigua and Barbuda and declare those expropriations unlawful under the laws of Antigua and Barbuda.  Such an incursion by this Court would encroach on the interests of international comity and separation of powers that the Act of State Doctrine protects.  Therefore, Plaintiffs' claims of avoidance must be dismissed.

## C. CONCLUSION

For these reasons, Antigua and Barbuda respectfully requests that this Court grant its motion to dismiss for lack of jurisdiction based on sovereign immunity.  In the alternative, this Court should dismiss the Complaint for failure to state a claim.

December 1, 2010.

Respectfully submitted,

HOGAN LOVELLS US LLP

By:    *s/ Tom Bayko*

       Tom Bayko
       State Bar No. 01864500
       tom.bayko@hoganlovells.com
       Trevor Jefferies
       State Bar No. 00790963
       trevor.jefferies@hoganlovells.com
       Joshua Newcomer
       State Bar No. 24060329
       joshua.newcomer@hoganlovells.com
       700 Louisiana Street, Suite 4300
       Houston, Texas 77002
       Telephone: (713) 632-1425
       Facsimile: (713) 583-6021

       David Dunn (*pro hac vice pending*)
       david.dunn@hoganlovells.com
       875 Third Avenue
       New York, NY 10022
       Telephone: (212) 918-3515
       Facsimile: (212) 918-3100

       Counsel for Defendant Antigua and Barbuda

## CERTIFICATE OF SERVICE

On December 1, 2010, I electronically submitted the foregoing document with the clerk of court for the U.S. District Court, Northern District of Texas, using the electronic case filing system of the court.  I hereby certify that I have served all counsel and/or pro se parties of record electronically or by another manner authorized by Federal Rule of Civil Procedure 5 (b)(2):

Paul B Lackey
Email: pbl@lhlaw.net
Jamie R Welton
Email: jrw@lhlaw.net
LACKEY HERSHMAN
3102 Oak Lawn Ave
Suite 700
Dallas, TX 75219
214/560-2206
Fax: 214/560-2203

Gregory A Blue
Email: gblue@mfbnyc.com
Peter D Morgenstern
Email: pmorgenstern@mfbnyc.com
Rachel K Marcoccia
Email: rmarcoccia@mfbnyc.com
MORGENSTERN & BLUE LLC
885 Third Ave
New York, NY 10022
212/750-6776
Fax: 212/208-6870

*/s/ Tom Bayko*
Tom Bayko