IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| JOAN GALE FRANK, *et al.*, | § | |
| | § | |
| Plaintiffs, | § | |
| | § | |
| v. | § | Civil Action No. 3:09-CV-2165-N |
| | § | |
| THE COMMONWEALTH OF ANTIGUA | § | |
| AND BARBUDA, | § | |
| | § | |
| Defendant. | § | |

# ORDER

This Order addresses Defendant the Commonwealth of Antigua and Barbuda's ("Antigua") motion to dismiss based on sovereign immunity and for failure to state a claim [43]. The Court grants the motion in part and denies it in part.

## I. THE PARTIES' DISPUTE

This case arises out of the Securities and Exchange Commission's (the "SEC") ongoing securities fraud action against R. Allen Stanford, his associates, and various entities under his control (collectively, "Stanford"). As part of that litigation, this Court "assume[d] exclusive jurisdiction and t[ook] possession" of the "Receivership Assets" and "Receivership Records" (collectively, the "Receivership Estate"). *See* Second Am. Order Appointing Receiver, July 19, 2010 [1130] (the "Receivership Order"), *in SEC v. Stanford Int'l Bank Ltd.*, Civil Action No. 3:09-CV-0298-N (N.D. Tex. filed Feb. 17, 2009). The Court appointed Ralph S. Janvey (the "Receiver") to serve as receiver for the Receivership Estate

and vested him with "the full power of an equity receiver under common law as well as such powers as are enumerated" in the Receivership Order. *Id.* at 3.

Among these enumerated powers, the Court "authorized [the Receiver] to immediately take and have complete and exclusive control, possession, and custody of the Receivership Estate and to any assets traceable to assets owned by the Receivership Estate." *Id.* at 4. The Court "specifically directed and authorized [the Receiver] to . . . [c]ollect, marshal, and take custody, control, and possession of all the funds, accounts, mail, and other assets of, or in the possession or under the control of, the Receivership Estate, or assets traceable to assets owned or controlled by the Receivership Estate, wherever situated," *id.*, and to file in this Court "such actions or proceedings to impose a constructive trust, obtain possession, and/or recover judgment with respect to persons or entities who received assets or records traceable to the Receivership Estate," *id.* at 5.

Plaintiffs in this action are Stanford investors who allege to have lost their investments to the Stanford fraud. They seek to certify a class of similarly situated investors in this action against Antigua. Antigua, Plaintiffs allege, played an integral role in the duration and success of Stanford's Ponzi scheme. According to Plaintiffs, Antigua accepted numerous loans and other financial contributions from Stanford and in return provided him with a significant amount of influence over Antigua generally, and especially over its financial regulatory sector. Antigua allowed Stanford to operate his scheme without exercising any scrutiny into its propriety, and further assisted him by frustrating the efforts of external regulators to uncover his wrongdoing. Crucial to this assistance were the efforts of the

Financial Services Regulatory Commission of Antigua ("FSRC"). As an Antiguan regulatory body, the FSRC and its administrator Leroy King were able to run interference with external regulators and provide legitimacy to Stanford's scheme. After Stanford's scheme collapsed and this Court appointed the Receiver, Plaintiffs allege Antigua converted the Bank of Antigua ("BOA") – a Stanford entity – by seizing its Antiguan assets in violation of the Receivership Order.

Based on these allegations, Plaintiffs bring claims for aiding and abetting fraud and avoidance of fraudulent transfers under the Texas Uniform Fraudulent Transfer Act ("TUFTA"), TEX. BUS. & COM. CODE ANN. §§ 24.001–24.013.[1] Antigua moves to dismiss on the basis that it is immune from jurisdiction in this Court under the FSIA. In the alternative, it asserts Plaintiffs have failed to adequately plead their claims under Rule 12(b)(6).

## II. RULE 12(b)(1) AND THE FSIA

Under the Constitution, a federal court may decide only actual "Cases" or "Controversies." U.S. CONST. art. III, § 2. "A case is properly dismissed for lack of subject matter jurisdiction when the court lacks the statutory or constitutional power to adjudicate the case." *Home Builders Ass'n of Miss., Inc. v. City of Madison*, 143 F.3d 1006, 1010 (5th Cir. 1998) (quoting *Nowak v. Ironworkers Local 6 Pension Fund*, 81 F.3d 1182, 1187 (2d Cir. 1996)). "The FSIA provides the sole source of subject matter jurisdiction in suits against

---

[1] Plaintiffs initially brought claims for violation of the Racketeer Influenced and Corrupt Organizations Act ("RICO"), but have withdrawn them. *See* Pls.' Resp. Mot. Dismiss 5 n.2 [57].

a foreign state." *Dale v. Colagiovanni*, 443 F.3d 425, 428–29 (5th Cir. 2006) (citing *Argentine Republic v. Amerada Hess Shipping Corp.*, 488 U.S. 428, 434–39 (1989)).

A court deciding a Rule 12(b)(1) motion may consider matters of fact which may be in dispute. *See Ramming v. United States*, 281 F.3d 158, 161 (5th Cir. 2001) (citing *Williamson v. Tucker*, 645 F.2d 404, 413 (5th Cir. 1981)). However, under the FSIA, "[i]f the defendant challenges only the legal sufficiency of the plaintiff's jurisdictional allegations, then the district court should take the plaintiff's factual allegations as true and determine whether they bring the case within any of the exceptions to immunity invoked by the plaintiff." *Phoenix Consulting Inc. v. Republic of Angola*, 216 F.3d 36, 40 (D.C. Cir. 2000) (citing *Saudi Arabia v. Nelson*, 507 U.S. 349, 351, 361 (1993)). When a motion to dismiss raises a mixed question of law and fact, "the court must go beyond the pleadings and resolve any disputed issues of fact the resolution of which is necessary to a ruling upon the motion to dismiss." *Id.*

As mentioned, the FSIA provides the sole source of jurisdiction over foreign states.[2] "The general rule under the FSIA is that foreign states are immune from the jurisdiction of the United States Courts." *Dale*, 443 F.3d at 428 (internal quotation marks omitted). "However, a district court can exercise subject matter jurisdiction over a foreign state if one of the statute's exceptions apply." *Id.* (internal quotation marks omitted).

---

[2]Plaintiffs do not contest that Antigua is a "foreign state" under the FSIA. *See* Pls.' Resp. Mot. Dismiss 24 ("Plaintiffs acknowledge that Antigua is a sovereign state and presumptively within the ambit of the FSIA's protections.").

As the party asserting immunity, Antigua bears the burden of persuasion. *See United States v. Moats*, 961 F.2d 1198, 1205 (5th Cir. 1992). However, once Antigua makes a prima facie showing of immunity, the burden shifts to Plaintiffs to demonstrate that one of the exceptions to immunity applies. *Id.* If Plaintiffs can make this demonstration, then Antigua must show that the exception does not apply. *Id.* Because the parties agree that Antigua qualifies as a foreign state, the Court moves to determine whether Plaintiffs can establish an exception applies.

### III. THIS COURT HAS JURISDICTION OVER THIS SUIT UNDER THE FSIA

Plaintiffs assert that three exceptions under the FSIA apply to this action. Those exceptions are the waiver exception, *see* 28 U.S.C. § 1605(a)(1); the commercial activity exception, *see id.* § 1605(a)(2); and the expropriation exception, *see id.* § 1605(a)(3). The Court addresses each in turn.

#### *A. The Waiver Exception Does Not Apply*

A foreign state is not immune from suit under the FSIA in any case "in which the foreign state has waived its immunity either explicitly or by implication . . . ." *Id.* § 1605(a)(1). "The waiver exception is to be narrowly construed." *Pere v. Nuovo Pignone, Inc.*, 150 F.3d 477, 482 (5th Cir. 1998). Courts rarely find an implied waiver "without strong evidence that this is what the foreign state intended." *Rodriguez v. Transnave Inc.*, 8 F.3d 284, 287 (5th Cir. 1993).

In support of their argument for applying the waiver exception, Plaintiffs refer the Court to the terms of two individual loans that Stanford extended to Antigua. *See* Pls.' Resp.

Mot. Dismiss 26–27. One loan, a loan for $40 million (the "$40 Million Loan"), is governed by a loan agreement provided to the Court by Plaintiffs. *See* Pls.' Decl. Part 2 56–82 [57-2]. The second loan, a loan for $31 million (the "$31 Million Loan"), is governed by an Antiguan act of parliament, also provided to the Court by Plaintiffs. *See id.* at 84–93. The $40 Million Loan contains a "Waiver of Immunity" clause, which provides in relevant part:

> Borrower [Antigua] hereby irrevocably and unconditionally waives any and all defenses it may possess based in whole or in part upon the doctrine of sovereign immunity *with respect to the Loan, the Note, this Loan Agreement, and the agreements, instruments, and transactions contemplated hereby*.

*Id.* at 80 (emphasis added). The $40 Million Loan also contains a "Governing Law; Service of Process; Venue" clause that governs what law applies to the loan, how service of process is to be effected, and where venue shall lie with respect to suits on the loan. *Id.* at 78.

Meanwhile, the $31 Million Loan contains a "Governing Law and Jurisdiction" clause that provides in relevant part:

> *For any dispute or disagreement relating to this letter*, *the Loan or the Loan documentation*, the Borrower [Antigua] submits to the nonexclusive jurisdiction of the courts of Antigua and Barbuda, waives any claim that such court is an inconvenient forum, and waives any claim or right to immunity the Borrower or its property may now or hereafter enjoy . . . .

*Id.* at 90–91 (emphasis added). Based on the language contained in both loans, Plaintiffs argue Antigua has both explicitly and implicitly waived its right to sovereign immunity.

*1. Antigua Has Not Explicitly Waived its Immunity.* – Neither the $40 Million Loan nor the $31 Million Loan explicitly waives Antigua's immunity from Plaintiffs' suit. The waiver language from both loans, as emphasized above, waives immunity only for disputes or disagreements based on the respective loans and related documentation. Thus, any explicit

waiver of immunity exists only insofar as Plaintiffs assert claims arising out of the loans themselves.[3]

Plaintiffs do not address this limitation. In any event, the only claims Plaintiffs could plausibly argue arise out of the loans are the claims for avoidance of fraudulent transfers under TUFTA. However, this Court has previously recognized that Stanford's investor-creditors lack standing to bring claims for avoidance of Stanford's fraudulent transfers, because those claims belong to the Receiver and his assignees. *See* Order 7–8, April 21, 2015 [234], *in Rotstain v. Trustmark Nat'l Bank*, Civil Action No. 3:09-CV-2384-N (N.D. Tex. filed Dec. 15, 2009). Thus, because the Court would independently conclude Plaintiffs lack standing to bring the TUFTA claims based on the loans, Plaintiffs lack any basis for invoking the loans' explicit waiver provisions.[4]

---

[3]The Court doubts that Plaintiffs could rely on a waiver contained in a contract to which they were not a party, no matter how broadly the waiver was worded.

[4]The Court addresses Plaintiffs' standing in its Rule 12(b)(1) analysis because statutory standing is jurisdictional, and the Court may consider it simultaneously with other challenges to subject matter jurisdiction. *See Ass'n of Battery Recyclers, Inc. v. E.P.A.*, 716 F.3d 667, 676–77 (2d Cir. 2013) (Silberman, J., concurring) (citing *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 97 n.2 (1998)).

Additionally, Plaintiffs' arguments concerning the Receiver's desire to allow investor suits to go forward on behalf of the Receivership Estate, whatever their merit, are moot now because OSIC, as the Receiver's assignee, has filed suit against Antigua for fraudulent transfer. *See Official Stanford Investors Committee v. Antigua & Barbuda*, Civil Action No. 3:13-CV-0760-N (N.D. Tex. filed Feb. 15, 2013). Whatever the equitable appeal of Plaintiffs' concern for the Receivership Estate, the Receiver has now taken his own steps to obtain recovery of the fraudulent transfers at issue here.

***2. Antigua Has Not Implicitly Waived its Immunity.*** – Plaintiffs also assert that the inclusion of choice of law provisions in loan or transaction documents may also constitute an implicit waiver of sovereign immunity. Pls.' Resp. Mot. Dismiss 27 (citing *Marlowe v. Argentine Naval Comm'n*, 604 F. Supp. 703, 708 (D.D.C. 1985); *Resource Dynamics Int'l Ltd. v. Gen. People's Comm.*, 593 F. Supp. 572, 575 (N.D. Ga. 1984)). However, the Fifth Circuit has noted that "in cases in which implied waiver based upon a contract has been found, the contract was between the parties suing and being sued." *Pere*, 150 F.3d at 482. Here, Plaintiffs were not parties to the loan contracts. Thus, any argument for implied waiver based on contract is foreclosed. The Court concludes that Antigua has not waived its immunity under the FSIA as it pertains to this action.

### *B. The Commercial Activities Exception Applies*

Plaintiffs argue that the commercial activities exception applies both to their fraudulent transfer claims and to their aiding and abetting fraud claims. Because the Court has found Plaintiffs lack standing to assert fraudulent transfer claims, the Court addresses the commercial activities exception only insofar as it applies to the aiding and abetting fraud claims.

The commercial activities exception consists of three separate clauses. The parties restrict their arguments to the third clause. The third clause lifts FSIA immunity in any case "in which the action is based . . . upon an act outside the territory of the United States in connection with a commercial activity of the foreign state elsewhere and that act causes a direct effect in the United States." 28 U.S.C. § 1605(a)(2). Under section 1605(a)(2)'s third

clause, the Court conducts a three part inquiry to determine whether this lawsuit is (1) based on an act outside the territory of the United States; (2) that was taken "in connection with a commercial activity" of Antigua outside the United States; and (3) that caused a "direct effect" in the United States. *Republic of Argentina v. Weltover, Inc.*, 504 U.S. 607, 611 (1992). Antigua challenges all three elements of this exception.

***1. Plaintiffs' Suit Is Based Upon An Act Outside the United States.*** – Antigua doesn't so much deny that Plaintiffs' suit is based upon an act, but rather contends the acts supporting Plaintiffs' claims cannot be attributed to Antigua. Specifically, Antigua maintains that allegations based on acts undertaken by Antigua's FSRC and its representative Leroy King cannot be attributed to Antigua.

Absent a showing of alter ego, the acts of a foreign state's instrumentality cannot be attributed to the foreign state. *See First Nat. City Bank v. Banco Para El Comercio Exterior de Cuba*, 462 U.S. 611, 626–27 (1983) ("[G]overnment instrumentalities established as juridical entities distinct and independent from their sovereign should normally be treated as such."); *Foremost-McKesson, Inc. v. Islamic Republic of Iran*, 905 F.2d 438, 446 (D.C. Cir. 1990) ("[I]nstrumentalities and agencies are accorded a presumption of independent status."). Courts interpreting this general principal in the context of the FSIA have dismissed claims against the foreign state where the plaintiff's allegations are actually against the foreign state's agency or instrumentality. *See, e.g.*, *Amorrortu v. Republic of Peru*, 570 F. Supp. 2d 916, 923 (S.D. Tex. 2008) (dismissing claims against Peru where allegations were based on conduct of a state-owned company).

A plaintiff can overcome this general rule by showing the instrumentality operated as the foreign state's agent, *see Can-Am Int'l, LLC v. Republic of Trinidad & Tobago*, 169 F. App'x 396, 405–06 (5th Cir. 2006), or by showing manifest injustice, *see Foremost-McKesson*, 905 F.2d at 446. Plaintiffs do not attempt to make this showing, however. Nor do Plaintiffs directly address Antigua's argument that the Court may not attribute FSRC's and King's acts to Antigua as a sovereign. Indeed, Plaintiffs' only response to this argument is to state that "Antigua at <u>all</u> levels of government engaged in significant misconduct . . . ." Pls.' Resp. Mot. Dismiss 31. Thus, in the absence of any assertion of agency or manifest injustice, the Court holds Plaintiffs cannot rely on their allegations as to FSRC and King in order to plead a commercial activity on the part of Antigua. That does not end the inquiry, however, because Plaintiffs do allege some acts undertaken by Antigua that could support application of the commercial activity exception.

***2. Antigua's Acts Were Taken In Connection With Commercial Activities.*** – Under Plaintiffs' theory of the case, Antigua's acts upon which this suit are based are those that assisted Stanford in avoiding detection. *See, e.g.*, Compl. ¶ 165 [1] ("Antigua aided and abetted the Stanford Enterprises by providing the Stanford Enterprises with information about the SEC's and the ECCB's inquiries regarding SIBL and SIBL's fraudulent activities."). To support jurisdiction, Plaintiffs must also allege these acts were taken "in connection with" commercial activities.

The Court first determines that the receipt of a series of loans, as alleged by Plaintiffs, constituted commercial activity on the part of Antigua. The FSIA defines "commercial

activity" as "either a regular course of commercial conduct or a particular commercial transaction or act." 28 U.S.C. § 1603(d). The Supreme Court has held that "when a foreign government acts, not as a regulator of a market, but in the manner of a private player within it, the foreign sovereign's actions are 'commercial' within the meaning of the FSIA." *Weltover*, 504 U.S. at 614. The question "is whether the particular actions that the foreign state performs (whatever the motive behind them) are the *type* of actions by which a private party engages in 'trade and traffic or commerce[.]'" *Id.* (quoting Black's Law Dictionary 270 (6th ed. 1990)).

Antigua's acceptance of loans from Stanford constitutes commercial activity. The provision and acceptance of loans is quintessential commercial activity in which a private actor in the marketplace might engage. Indeed, Antigua does not contend that its acceptance of loans, in the abstract, does not constitute commercial activity. The closer question, however, is whether Antigua's acts supporting Plaintiffs' claims were "in connection with" its acceptance of loans.

"To satisfy the 'in connection with' requirement, the acts complained of must have some 'substantive connection' or a 'causal link' to the commercial activity." *Adler v. Fed. Repub. of Nigeria*, 107 F.3d 720, 726 (9th Cir. 1997) (citing *Federal Ins. Co. v. Richard I. Rubin & Co.*, 12 F.3d 1270, 1289–91 (3d Cir. 1993)). In *Adler*, the court found the "in connection with" requirement satisfied. There, the alleged commercial activity was the foreign state's agreement to a contract for services with the plaintiff. *Id.* at 725. The plaintiff's claims, in turn, were based on acts associated with the contract, including

fraudulent inducement to enter the contract, breach of the contract, fraudulent inducement to maintain the contract, and negligence in failing to prevent others from perpetrating the contractual fraud. *Id.* at 726. The court concluded each of these alleged acts were substantively connected to the underlying contract. *Id.*

Here, the acts supporting Plaintiffs' claims – Antigua's assistance to Stanford in evading detection – have a substantive connection to Antigua's commercial activity – the receipt of loans from Stanford. Plaintiffs allege Stanford's provision of loans to Antigua was conditioned on Antigua's continued amenability to and support for Stanford's operations. *See* Compl. ¶ 3. Plaintiffs allege a number of ways in which Antigua gave support to Stanford, including coercing landowners to sell property to Stanford, *id.* ¶ 111, appointing Stanford to regulatory committees, *id.* ¶ 136, and shielding Stanford from other regulatory bodies, *id.* ¶ 148. And according to Plaintiffs, this assistance was rendered knowing that Stanford would continue to provide loans to Antigua. Plaintiffs' complaint supports the reasonable inference that Antigua and Stanford maintained this quid pro quo relationship. Taking the Plaintiffs' allegations as true and indulging reasonable inferences in their favor, the Court concludes Antigua's various acts in furtherance of Stanford's Ponzi scheme had a substantive connection to their acceptance of loans from Stanford. The Court moves to a determination of whether Antigua's actions had a direct effect in the United States.

***3. Antigua's Actions Had a Direct Effect in the United States.*** – Under the final step of the commercial activities analysis, the Court must determine whether Antigua's acts supporting Plaintiffs' claims had a "direct effect" in the United States. "[A]n effect is

'direct' if it follows 'as an immediate consequence of the defendant's . . . activity.'" *Weltover*, 504 U.S. at 618 (alteration in original) (quoting *Weltover, Inc. v. Republic of Argentina*, 941 F.2d 145, 152 (2d Cir. 1991)). The Supreme Court has "reject[ed] the suggestion that § 1605(a)(2) contains any unexpressed requirement of 'substantiality' or 'foreseeability.'" *Id.* However, the effects in the United States must be more than "trivial." *Id.*

The Fifth Circuit has held "that a financial loss incurred in the United States by an American plaintiff may constitute a direct effect that supports jurisdiction under the third clause of the commercial activity exception." *Voest-Alpine Trading USA Corp. v. Bank of China*, 142 F.3d 887, 893 (5th Cir. 1998) (citing *Callejo v. Bancomer, S.A.*, 764 F.2d 1101, 1111–12 (5th Cir. 1985)); *but see Can-Am Int'l*, 169 F. App'x at 408 ("[Plaintiff's] alleged financial loss in the United States in and of itself is not enough to meet [the direct effect] prong of the commercial activity exception"). Here, Antigua's acts in furtherance of Stanford's scheme had a direct effect in the United States. Plaintiffs have essentially alleged that Antigua was a co-conspirator of Stanford – that it acted to insulate Stanford from regulatory scrutiny and facilitate the growth of his scheme. According to Plaintiffs, Antigua played an indispensable role in the Stanford fraud, and was fully aware of the role it played. Each of Antigua's alleged acts of assistance buoyed Stanford's sale of fraudulent CDs, fraudulent CDs that were purchased by Plaintiffs. Those fraudulent CDs were the instruments by which Plaintiffs were defrauded of their investments. Plaintiffs' losses thus followed as direct effects of Antigua's material assistance to Stanford's scheme. In

providing Stanford with the regulatory safe haven from which he perpetrated his fraud on American investors, Antigua engaged in conduct that had a direct effect in the United States.

### C. The Expropriation Exception Does Not Apply

The expropriation exception to the FSIA lifts immunity in any case:

> in which rights in property taken in violation of international law are in issue and . . . that property or any property exchanged for such property is owned or operated by an agency or instrumentality of the foreign state and that agency or instrumentality is engaged in a commercial activity in the United States . . . .

28 U.S.C. § 1605(a)(3).

Antigua argues the expropriation exception is inapplicable because the property rights at issue must belong to the plaintiff. *See* Def.'s Mot. Dismiss 21–22 (citing *Ammorrortu*, 570 F. Supp. 2d at 924). Plaintiffs do not contest this statement of the law, but instead argue that their property rights are at issue because they were creditors of the Bank of Antigua at the time Antigua allegedly seized it. *See* Pls.' Resp. Mot. Dismiss 32–33.

This argument fails because as addressed above, Plaintiffs lack standing to sue on behalf of the Stanford entities for the alleged conversion of the Bank of Antigua. As in *Ammorortu*, this appears to be a case in which Plaintiffs attempt to assert the rights of a different entity. Plaintiffs' property rights are thus not in issue and the expropriation exception is facially inapplicable.

Even if Plaintiffs could show their property rights were at issue, they would fail to satisfy the nexus requirement. The expropriation exception's nexus requirement requires in part that the agency or instrumentality in possession of the property be engaged in a commercial activity in the United States. 28 U.S.C. § 1605(a)(3). Plaintiffs have nowhere

alleged that Antigua or any of its instrumentalities are engaged in commercial activities *in the United States*. Plaintiffs' response to the motion to dismiss concedes as much, arguing only that Antigua was engaged in commercial activity with Stanford. *See* Pls.' Resp. Mot. Dismiss 33. This is insufficient. The expropriation exception is clear: the foreign state's agent or instrumentality must engage in commercial activity in the United States. Accordingly, the Court holds the expropriation exception to the FSIA does not apply. However, having found that the commercial activity exception applies to Plaintiffs' aiding and abetting fraud claims, the Court moves to consideration of Antigua's Rule 12(b)(6) arguments.

### IV. ANTIGUA'S MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM

Antigua argues that even if this Court has jurisdiction over Plaintiffs' claims, the complaint should be dismissed for failure to state a claim under Rule 12(b)(6). Plaintiffs initially brought claims for violation of RICO, a claim for aiding and abetting fraud, and a claim for recovery of fraudulent transfers under TUFTA. However, Plaintiffs have abandoned their RICO claims, *see* Pls.' Resp. Mot. Dismiss 5 n.2, and the Court has determined that Plaintiffs lack standing to assert TUFTA claims on behalf of the Receivership Estate, *see supra* Subpart III.A.1. Accordingly, the Court must only determine whether Plaintiffs have adequately pled their claim for aiding and abetting fraud.

#### A. The Rule 12(b)(6) Legal Standard

When faced with a Rule 12(b)(6) motion to dismiss, a court must determine whether the plaintiff has asserted a legally sufficient claim for relief. *Blackburn v. City of Marshall*,

42 F.3d 925, 931 (5th Cir. 1995). A viable complaint must include "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). To meet this "facial plausibility" standard, a plaintiff must "plead[] factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). A court generally accepts well-pleaded facts as true and construes the complaint in the light most favorable to the plaintiff. *Gines v. D.R. Horton, Inc.*, 699 F.3d 812, 816 (5th Cir. 2012). But a court does not accept as true "conclusory allegations, unwarranted factual inferences, or legal conclusions." *Ferrer v. Chevron Corp.*, 484 F.3d 776, 780 (5th Cir. 2007). A plaintiff must provide "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555. "Factual allegations must be enough to raise a right to relief above the speculative level on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." *Id*. (internal citations omitted).

### *B. Plaintiffs Adequately Plead Their Claim for Aiding and Abetting Fraud*

Antigua's sole argument for dismissal of Plaintiffs' aiding and abetting fraud claim is that as a governmental entity, Antigua cannot form the requisite scienter to support an aiding and abetting claim. *See* Def.'s Mot. Dismiss 26–27 (citing *Lancaster Cmty. Hosp. v. Antelope Valley Hosp. Dist.*, 940 F.2d 397, 404 (9th Cir. 1991)). *Lancaster* held that a governmental entity could not be held liable under RICO because it was incapable of forming the criminal intent required to plead the predicate act. 940 F.2d at 404.

The Court declines to dismiss Plaintiffs' aiding and abetting fraud claims based on *Lancaster*. First, *Lancaster* on its face applies to governmental entities' capacity to form the criminal intent necessary for a RICO claim. *Id.* An aiding and abetting fraud claim does not implicate criminal intent. In addition, the *Lancaster* rule was based in large part on the public policy implications of holding the public liable for their municipality's wrongdoing where the municipality's wrongdoing had targeted the public as victims. *Id.* That rationale is absent here as Plaintiffs – the alleged victims – are not citizens of Antigua. Because Antigua fails to establish that the same considerations that supported the rule in *Lancaster* are also at play here, the Court declines to dismiss Plaintiffs' aiding and abetting fraud claims.

## Conclusion

The Court concludes Plaintiffs lack standing to bring TUFTA claims on behalf of the Receivership Estate and dismisses those claims with prejudice. The Court retains subject matter jurisdiction over Plaintiffs' aiding and abetting fraud claims under the FSIA. The Court denies Antigua's motion to dismiss Plaintiffs' claims for aiding and abetting fraud.

Signed June 26, 2015.

                                            David C. Godbey
                                            United States District Judge